ROSE et al. v. McKIE.

(Circuit Court of Appeals, First Circuit. May 24, 1906.)

No. 620.

1. MANDAMUS—ENFORCEMENT OF JUDGMENT AGAINST TOWN—COMPELLING ACTION BY OFFICERS.

It is no defense, to an application for a writ of mandamus to compel officers of a town to perform duties imposed on them by statute toward providing for the payment of a judgment against the town, that such duties do not include all the acts requisite to a full satisfaction of the judgment.

[Ed. Note—Enforcement of judgment against municipality by mandamus, see note to Holt County v. National Life Ins. Co., 25 C. C. A. 475.]

2. MUNICIPAL CORPORATIONS—PAYMENT OF DEBT—AUTHORITY TO TAX.

Authority given to a town by statute to contract a debt carries with it authority to tax for the payment of such debt, unless expressly withheld.

[Ed. Note.—For cases in point, see vol. 36, Cent. Dig. Municipal Corporations, § 2043.]

3. SAME—MANDAMUS TO COMPEL LEVY OF TAX—DEFENSES.

It is no defense, to an application for a writ of mandamus to compel the levy of a tax by a town to pay a judgment against it, that the authority of the town to tax is limited, unless it is also shown that such limited authority has been exhausted. The authority is not exhausted by an issue of bonds.

**4. SAME—AUTHORITY TO PAY DEBT.**

Authority given a town by statute to contract a debt necessarily carries with it authority to appropriate money for the payment of such debt.

**5. MUNICIPAL CORPORATIONS—DUTIES OF OFFICERS—TOWN WARDEN IN RHODE ISLAND.**

By the statutes of Rhode Island, a warden, in towns authorized by their charters to elect such officers, is vested with the powers and duties of a justice of the peace.

In Error to the Circuit Court of the United States for the District of Rhode Island.

For opinion below, see 140 Fed. 145.

Walter H. Barney (Barney & Lee, on the brief), for plaintiffs in error.

Stephen R. Jones (Richard E. Lyman and Carver & Blodgett, on the brief), for defendant in error.

Before COLT, PUTNAM, and LOWELL, Circuit Judges.

LOWELL, Circuit Judge. This was a petition for a writ of mandamus to Rose, the treasurer, Champlin, the first warden, and Mott, the town sergeant, of the town of New Shoreham in Rhode Island. The petition alleged that McKie had recovered judgment in the Circuit Court against the town of New Shoreham, and had demanded payment thereof from Rose; that Rose refused to pay, stating to the officer charged with the service of the execution that there was not money enough in the town treasury to pay it; that Rose had not sufficient money of the town of New Shoreham to pay the judgment; that it thus became the duty of Rose to apply to a warden of the town for a warrant to the sergeant to summon a town meeting which should levy a tax to pay the execution. The petition sought a writ of mandamus to Rose, commanding him to apply to Champlin, as warden, to grant a warrant to the town sergeant, for a town meeting "for the speedy ordering and making a tax to be collected to reimburse, pay or satisfy said town treasurer the money, costs and charges recovered against him, and to pay and satisfy the said judgment and execution of your petitioner." The petition further sought corresponding writs to Champlin and Mott.

Rose made answer, admitting the judgment, his refusal to pay the execution, his lack of funds, and the official character of the respondents.

The answer proceeded as follows:

"That under said chapters 770 and 893 of the Public Laws, hereinabove referred to, in and by which said town of New Shoreham was authorized to aid in the purchase of or construct a steamboat or steamboats for the transportation of passengers and freight to and from said town, and to hold and operate the same as in and by said acts is set forth, the right of said town to make appropriations for said purposes is expressly limited by said chapter 770 to a sum not exceeding fifty thousand dollars ($50,000), and by said chapter 893 to a sum not exceeding thirty thousand dollars ($30,000) in addition to the sum of fifty thousand dollars ($50,000) authorized and appropriated by said town under section 1 of said chapter 770; and in and by said acts, said town was authorized to hire said money for the purposes set forth in said acts, and to issue the notes or bonds of said town for said sums respectively, in such form and upon such terms as the town council of said town might determine.

"And this defendant avers that at a special town meeting of the electors of the town of New Shoreham, qualified to vote for the expenditure of money therein, held in said town on the twenty-seventh day of April, A. D. 1900, said electors, by a majority vote, appropriated the sum of fifty thousand dollars ($50,000) for the purposes mentioned in said chapter 770 of the Public Laws, and authorized and directed the town treasurer to hire said sum for said purposes, and to sign, execute and deliver the negotiable notes or bonds of said town therefor for such a term of years (not exceeding thirty) and in such form and upon such terms (not exceeding four per cent [4%] per annum, semiannually) as the town council might determine was for the best interests of said town.

"That thereafterwards, to wit, on the twenty-fourth day of July. A. D. 1900, the town council of said town of New Shoreham, acting under the provisions of said chapter 770 and of said vote of said special town meeting, authorized and directed this defendant, as town treasurer, to hire the sum of five thousand dollars ($5,000) for said purposes, and to execute and deliver the negotiable note of the town therefor, as in said resolution was more specifically provided.

"That thereafterwards, to wit, on the seventeenth day of November. A. D. 1900, said town council, acting under the provisions of said chapter 770 and of said vote of said town council, authorized and directed this defendant, as town treasurer, to hire the additional sum of forty-five thousand dollars ($45,000) for the purposes aforesaid, and to execute and deliver the negotiable note or notes of said town therefor, as in said resolution was more specifically provided.

"That thereafterwards, at a special town meeting of the electors of the town of New Shoreham, qualified to vote for the expenditure of money therein, held in said New Shoreham on, to wit, the ninth day of April. A. D. 1901, said electors, by a majority vote, appropriated the further sum of thirty thousand dollars ($30,000) in addition to said previous sum of fifty thousand dollars ($50,000), in accordance with the provisions of said chapter 893 of the Public Laws, and for the purposes therein set forth, and authorized and directed the town treasurer of said town of New Shoreham to hire said sum of thirty thousand dollars ($30,000) and to sign, execute and deliver the negotiable note or notes of said town therefor, payable at such time and at such rates of interest as the town council of said town might determine.

"That thereafterwards said town council, on, to wit, the seventh day of October, A. D. 1901, authorized and directed this defendant, as town treasurer, to hire said sum of thirty thousand dollars ($30,000), in accordance with said vote of said town last-mentioned town meeting, and to execute and deliver the negotiable note or notes of said town therefor, as in said resolution was more specifically provided.

"That this defendant, acting under the authority of said acts and said votes of said town meetings and of said town council, above recited, proceeded as therein directed and hired on the negotiable notes of said town of New Shoreham said sums of five thousand dollars ($5,000), forty-five thousand dollars ($45,000), and thirty thousand dollars ($30,000), respectively, in all, the sum of eighty thousand dollars ($80,000) for the purposes aforesaid.

"And this defendant is advised that in making said appropriations and hiring said sums, above recited, said town has exhausted its authority to raise money for the purposes set forth in chapters 770 and 893 of the Public Laws, and that it has now no authority to appropriate or raise, either by a tax or by loan, any further sum for any of said purposes, including the payment of the judgment and execution referred to in said petition, unless further special legislative authority therefor shall be granted by act of the General Assembly of the state of Rhode Island.

"And this defendant is further advised that since said town, without such further legislative authority, would have no right or power to raise, appropriate or apply any additional sum for any of the purposes mentioned in said act, it would have no authority, without such additional legislation, to levy a special tax for the purpose of meeting said judgment and execution,

and that any such tax would be illegal and uncollectible; that, if any such tax would be levied and collected, the town would have no lawful power or authority to appropriate the proceeds thereof to the payment of said judgment and execution; and that therefore it is not the duty of this defendant to make application for a warrant to call a special town meeting to levy such a tax."

The material parts of the statutes referred to are as follows:

"Chapter 770 of the Public Laws of the State of Rhode Island, Passed April 26, 1900.

"An Act to Authorize the Town of New Shoreham to Facilitate Transportation to and from Said Town.

"It is enacted by the General Assembly as follows:

"Section 1. The town of New Shoreham is hereby authorized to aid in the purchase of or to construct a steamboat for the transportation of passengers and freight to and from said town, and may hold and dispose of said property like other property of said town: Provided, That a majority of the voters of said town, qualified to vote upon any proposition to impose a tax or for the expenditure of money therein, present and voting at any legal town meeting called for that purpose, shall vote in favor of such purchase or construction; and said town is hereby authorized and empowered to appropriate and use for the purposes above mentioned a sum not exceeding fifty thousand dollars, and to hire said money for said purposes and to issue the notes or bonds of said town for said sum in such form and upon such terms as the town council of said town may determine.

"Sec. 2. The control and management of said steamboat property shall be vested in a board of commissioners * * *.

"Sec. 3. Said board of commissioners shall have power to run said steamboat line to and from said town and the cities of Newport and Providence, and to establish rates of fare and charges for freight on said line and to sue for and collect the same. Said commissioners shall annually report in writing to the town treasurer of said town, and file a sworn statement of their account with said treasurer, showing the several sums received and paid by them as said commissioners during the previous year, and showing in detail the persons to whom and the purposes for which the payments were made.

*     *     *     *     *     *     *     *     *     *     *

"Sec. 6. This act shall take effect from and after its passage."

"Chapter 893 of the Public Laws of the State of Rhode Island, Passed March 22, 1901.

"An Act in Amendment of and in Addition to Chapter 770 of the Public Laws, Passed at the January Session, A. D. 1900.

"It is enacted by the General Assembly as follows:

"Section 1. The town of New Shoreham, in addition to the powers granted by chapter 770 of the Public Laws passed at the January session, A. D. 1900, is hereby authorized and empowered to purchase, aid in the purchase of, or to construct a steamboat or steamboats for the transportation of passengers and freight to and from said town, and may hold the same as provided in section one of said act * * * ; and said town is hereby authorized and empowered to appropriate and use for the purposes above mentioned, and for operating said boats, a sum not exceeding thirty thousand dollars in addition to the sum of fifty thousand dollars authorized and appropriated by said town under section one of said act, and to hire said money for said purposes and to issue the notes or bonds of said town for said sum in such form and upon said terms as the town council of said town may determine.

"Sec. 2. Section 3 of chapter 770 of the Public Laws, passed January, A. D. 1900, is hereby amended so as to read as follows:

" 'Sec. 3. Said board of commissioners shall have power to run and operate said steamboats to and from said town and the cities of Newport and Providence, or wherever said commissioners may determine, and to establish rates

of fare and charges for freight on said steamboats, and to sue for and collect the same in the name of said town, and to make such contracts for and in behalf of said town, in connection with the operation of said steamboats and said business, as in their judgment they may deem necessary and proper. Said commissioners shall annually report in writing to the town treasurer of said town, and file a sworn statement of their account with said treasurer, showing the several sums received and paid by them as said commissioners during the previous year, and showing in detail the persons to whom and the purposes for which the payments were made.'

"Sec. 3. This act shall take effect on and after its passage, and all acts and parts of acts inconsistent herewith are hereby repealed."

Other statutes of Rhode Island relied upon by the petitioner are as follows:

From chapter 36 of the General Laws of 1896:

"Sec. 12. Every person who shall have any money due him from any town or city, or any claim or demand, against any town or city, for any matter, cause or thing whatsoever, shall take the following method to obtain the same, to wit: Such person shall present to the town council of the town, or to the city council of the city, a particular account of his claim, debt, damages or demand, and how incurred or contracted; which being done, in case just and due satisfaction is not made him by the town or city treasurer of such town or city within forty days after the presentment of such claim, debt, damages or demand aforesaid, such person may commence his action against such treasurer for the recovery of the same.

"Sec. 13. On judgment being obtained for such debt, damages or demand, in case said treasurer shall not have sufficient of the money of such town or city in his hands to satisfy and pay the judgment obtained and the charges expended in defending such suit, the said treasurer shall make application to any justice of the peace in such town or city, and thereupon the justice shall grant a warrant to the town sergeant of such town, requiring him to warn the electors of the town to hold a town meeting, at such time and place as shall be appointed, or to the mayor of such city requiring him to call a special meeting of the city council of such city, for the speedy ordering and making a tax, to be collected for the reimbursement of said treasurer.

"Sec. 14. In case said electors, or said city council, as the case may be, upon due warning given them, shall not take due and effectual care to reimburse, pay or satisfy said treasurer the money, costs and charges by him expended, or recovered against him, upon petition, in the nature of a petition in equity, by him or by the person recovering the judgment named in section thirteen of this chapter, made to the [appellate division of the supreme] *superior* court at any time thereafter, setting forth facts [said division], *the court* may order the assessors of said town or city to assess upon the ratable property thereof, and the collector to collect, a tax sufficient for the payment of said judgment, with all incidental costs and charges, and the expenses of assessing and collecting such tax."[1]

The answer of Champlin admitted that he was first warden, but alleged that he was not the only warden or justice of the peace in New Shoreham. It alleged that Rose had made no application to Champlin to grant a warrant for town meeting; that Champlin had never declined or refused to issue a warrant; that he was ever ready and willing to issue a warrant, if lawful application was made for the purpose. The answer of Mott admitted that he was town sergeant, and set up that no warrant had ever been issued by a justice of the peace

---

[1] NOTE. The words in brackets in section 14 are stricken out, and the words in italics inserted by the provisions of the "Court and Practice Act," which went into effect July 17, 1905.

or by a warden directing him to summon a town meeting; that he had ever been ready and willing to make service of a warrant lawfully issued. The Circuit Court ordered the writ to issue commanding Rose to apply to Champlin for a warrant, commanding Champlin to grant the warrant to Mott, and commanding Mott to summon a town meeting.

Thereupon the respondents, Rose, Champlin, and Mott, sued out a writ of error to this court.

The plaintiffs in error, hereinafter called the respondents, contend that the relief sought is not within the jurisdiction of the Circuit Court. "A proceeding by mandamus to compel the levy of a tax to pay a judgment is in the nature of an execution." Chanute City v. Trader, 132 U. S. 210, 10 Sup. Ct. 67, 33 L. Ed. 345. The writ issues only as ancillary to other proceedings, and to fulfill the purpose of an execution where that remedy is not available or is ineffective. If the writ here ordered to issue required the town officers to levy a tax and satisfy the petitioner's judgment, argue the respondents, it might accord with precedent, but here it only compels the calling of a town meeting, a preliminary proceeding which does not necessarily provide payment of the petitioner's judgment, but may do no more than prepare for proceedings which are beyond the scope of this petition. If the town meeting summoned in accordance with the writ should not provide payment of the judgment, the petitioner could obtain its satisfaction only by supplemental proceedings under section 14 above quoted, either in this court or in some court of the state. The respondents' argument amounts to this: As the writ issues only to discharge the functions of an execution, it must discharge those functions completely or must be denied.

But it is not for the respondents to object that the remedy sought by the petitioner is incomplete. If the writ here prayed for be treated as a necessary part, but only a part, of the execution to which the petitioner is entitled, the writ should not be denied because all the remedy is not given at once. Mandamus to a town officer does not issue as of course wherever an execution against the town remains unsatisfied. It issues only to compel a town officer to do those acts which the law requires of him toward the payment of the judgment. If the law imposes upon him no duty in the matter, the writ will not issue against him. Conversely, the writ will not be denied, because his statutory duty does not extend to the full satisfaction of the execution. The writ will issue to compel him to do his duty to that end, be his part in the operation large or small. "Assuming that the return is true in fact, does it excuse the board of county commissioners from the performance of so much of the command of the writ as ordered them to collect and pay over, as well as to levy, the taxes to pay relator's judgment? The excuse offered is, in brief, that, although commanded to levy, collect, and pay over, the respondents are powerless to do more than levy, since the law devolves the duty of collecting and paying over upon another officer of the county, the treasurer, who can only act upon tax rolls to be prepared by the county clerk. The office, and the only office, of the writ of mandamus, when addressed to a

public officer, is to compel him to exercise such functions as the law confers upon him. When the law enjoins upon such an officer the performance of a specific act or duty, obedience to the law may, in the absence of other adequate remedy, be enforced by this writ." U. S. v. Labette County (C. C.) 7 Fed. 318, 320. In Labette County v. Moulton, 112 U. S. 217, 5. Sup. Ct. 108, 28 L. Ed. 698, it was contended by the respondents that they should not all be joined in one petition; that is, that the several steps making the "equivalent of the execution and levy" should be taken separately, and not combined in one proceeding. While the Supreme Court there held that all the steps of an assessment and levy might properly be directed by one writ, yet the court did not suggest that, for some particular reason, these steps might not be directed by separate proceedings. In Hawley v. Fairbanks, 108 U. S. 543, 548, 2 Sup. Ct. 846, 27 L. Ed. 820, the writ directed the county clerk to extend upon the tax collector's books a sum sufficient to pay the judgments in question. In U. S. v. Clark County, 96 U. S. 211, 24 L. Ed. 628, the writ directed the county clerk, and in Knox County v. U. S., 109 U. S. 229, 3 Sup. Ct. 131, 27 L. Ed. 915, it directed the justices of the county court, to draw a warrant on the county treasurer. In City of Little Rock v. U. S., 103 Fed. 418, 43 C. C. A. 261, the writ directed the issuance of warrants. In a later part of their brief, some of the respondents in this case raise the contention settled by the Supreme Court in Labette County v. Moulton, and they urge that they should not be joined in one petition. Thus they object in one breath that the petition asks too much and too little. Neither contention can be allowed.

We come next to the principal question raised in this case: Has the petitioner a right to the levy of a tax by the town in order to pay his judgment? That is the purpose of the writ and of the town meeting. He has recovered a judgment against the town. His debt is thus determined to be due and payable, founded upon a just contract. From the existence of the debt arises the presumption of the right to payment. "When authority is granted by the legislative branch of the government to a municipality, or a subdivision of a state, to contract an extraordinary debt by the issue of negotiable securities, the power to levy taxes sufficient to meet, at maturity, the obligation to be incurred, is conclusively implied, unless the law which confers the authority, or some general law in force at the time, clearly manifests a contrary legislative intention. The power to tax is necessarily an ingredient of such a power to contract, as, ordinarily, political bodies can only meet their pecuniary obligations through the instrumentality of taxation." Ralls County Court v. U. S., 105 U. S. 733, 735, 736, 26 L. Ed. 1220. The Supreme Court has held, however, that a municipality may owe a debt, that judgment may be recovered thereupon, and yet that the municipality may be forbidden to raise money for its payment by the ordinary means of raising money, viz., taxation. U. S. v. Macon County, 99 U. S. 582, 25 L. Ed. 331. Liability in theory may thus be established by the judgment; the right to take out execution may follow thereupon; the execution may be ineffective, and yet the writ of mandamus may be denied, although the writ is held to dis-

charge the function of an execution in suits against municipalities. Thus it has been said: "There is no necessary connection between the power to contract debts and the power to levy taxes to pay them." Board of Commissioners v. King, 67 Fed. 202, 205, 14 C. C. A. 421.

While this anomalous condition is well recognized, two things are to be observed concerning it: First, where there is a debt, authority to tax is presumed in the absence of some express provision to the contrary. Authority to contract a debt carries with it authority to tax, unless authority to tax is expressly denied. Ralls County Court v. U. S., 105 U. S. 733, 26 L. Ed. 1220; Citizens' Association v. Topeka, 20 Wall. 662, 22 L. Ed. 455; U. S. v. New Orleans, 98 U. S. 381, 393, 25 L. Ed. 225; U. S. v. Saunders, 124 Fed. 124, 128, 59 C. C. A. 394. Second, as the only effective limitation is upon the right to tax, the respondents' return or answer must show not only that this limitation exists, but that the limited authority to tax has been exhausted. City of Cleveland v. U. S., 111 Fed. 341, 348, 49 C. C. A. 383; Beaulieu v. Pleasant Hill (C. C.) 14 Fed. 222.

Applying these considerations to the case at bar, we find that the judgment has established a valid contract and debt. Harshman v. Knox County, 122 U. S. 306, 316, 7 Sup. Ct. 1171, 30 L. Ed. 1152. The only legislation referred to contains no express limitation of the town's authority to tax. The respondents offer two arguments:

A. That the statute has limited the town's authority to appropriate money for the purposes mentioned, and that the town has appropriated money up to the limit thus fixed. But that the town was authorized by the Legislature to contract with the petitioner, and thus to incur the debt upon which the judgment is based, has been settled by the judgment. And, as the respondents admit, the books contain no case in which authority to appropriate money for the payment of a debt is limited more narrowly than the authority given to incur the debt. Such a provision would be almost a contradiction in terms. Authority to contract a debt and authority to pay it cannot be separated. The courts have gone a long way when they have held a town may owe a debt, to pay which it may not levy a tax; but to hold that a town may owe a debt which it cannot pay by a mere appropriation of money in its treasury is to juggle with words. It is to say that a body corporate may owe money which it is forbidden by any means to pay; that an obligation to pay is compatible with an obligation not to pay. This construction of the statute cannot be admitted.

B. The respondents further contend that the limitation expressed in the statute is equivalent to a limitation of the town's authority to tax, and hence that only $80,000 can be raised by taxation. Even if this interpretation of the statute be sound, which we by no means decide, yet these respondents are not helped by it. Construed most strongly in their favor, their answer alleges no tax, but only that the town owes debts incurred under the statutes and not provided for, amounting in all to more than $80,000. In order to prevent the issue of the writ, under the construction of the statute just mentioned,

they must show not only a limitation of the town's authority to tax, but also that the town has exhausted the authority thus limited.

The respondents further contend that the statutes of Rhode Island make the granting of a warrant to the town sergeant the duty of a justice of the peace, while Champlin's office is that of first warden. By the charter incorporating the town of New Shoreham, granted November 6, 1672, it is provided that the freemen, inhabitants of Block Island, "shall choose two of the said freemen able and well qualified for the preservation of his Majesty's peace." "And that the said elect-ed and engaged persons shall be called Wardens." These wardens were given authority to issue writs for town meetings, to hold pleas of actions of account, debt, etc., and to have the conservation of the peace. Records of the Colony of Rhode Island, vol. 2, p. 467 et seq. See volume 4, p. 25. The office of warden in the town of New Shoreham is continued by the Constitution of Rhode Island, art. 10, § 7. By the Public Laws of Rhode Island of 1798, in section 12, p. 330, of "an act declaring towns to be bodies corporate, establishing town councils, regulating town meetings, and prescribing the manner of recovering debts due from towns," it was provided that, in case the town treasurer had not sufficient of the town's money in his hands to satisfy a judgment recovered against the town, "then, upon application made by such town treasurer to any justice of the peace or warden of such town, such justice or warden shall grant forth a warrant to the town sergeant of such town." In other respects this section follows substantially Gen. Laws 1896, p. 155, c. 36, § 14, above quoted. This provision was substantially re-enacted in the Public Laws of 1822, (page 257, § 12). In the Public Laws of 1844 (page 299, § 13), all mention of the warden was omitted from the corresponding section; but in another part of the Revision it was provided that "the powers and duties hereby, or by any special act conferred and imposed on justices of the peace, may, and shall be enjoyed and performed by wardens in those towns that are authorized by their original charters to elect wardens." Page 108, § 23. The provisions above referred to for the collection of debts may be traced through the successive revisions to section 14 of chapter 36, p. 155, of the General Laws of 1896. Gen. St. 1857, c. 30, § 13; Gen. St. 1872, c. 31, § 12; Pub. St. 1882, c. 34, § 13. The provision assimilating the duties of warden to those of justice of the peace may be traced in like manner. Gen. St. 1857, c. 168, § 24; Gen. St. 1872, c. 185, § 41; Pub. St. 1882, c. 196, § 40. In the General Laws of Rhode Island of 1896 (chapter 288, § 24), it appears as follows:

"The duties and powers hereby or by any special act conferred on District Courts and on justices of the peace may and shall be performed and enjoyed concurrently with the District Courts by wardens in those towns that are authorized by their original charters to elect such officers."

And in many other places throughout the statutes of Rhode Island it appears incidentally that the duties of a warden are ordinarily those of a justice of the peace.

From these considerations it appears that the Circuit Court committed no error in issuing the writ.

The judgment of the Circuit Court is affirmed, and the defendant in error recovers his costs of appeal.