BUNCH et al. v. UNITED STATES ex rel. and to the Use of
TOWNSEND et al.

(Circuit Court of Appeals, Eighth Circuit. September 2, 1918.)

No. 4999.

1. JUDGMENT ⊂⊃619—RES JUDICATA—JURISDICTION.

Judgment against a county is res judicata, on mandamus against its officers to compel levy for and payment of the judgment, as to the defense, that might have been made in the action, that there was no diversity of citizenship between the real parties in interest to give the court jurisdiction.

2. JUDGMENT ⊂⊃619—RES JUDICATA—LIMITATIONS.

The defense of limitations, available in action on judgment, is res judicata, on mandamus to compel levy for and payment of the judgment for plaintiff in the action.

3. JUDGMENT ⊂⊃511—COLLATERAL ATTACK—FRAUD.

Fraudulent representations as to ownership of the cause of action to show jurisdiction on the ground of diversity of citizenship do not render void the judgment for plaintiff, and so are available only in direct suit to avoid, and not on collateral attack in mandamus, to compel payment of, the judgment.

4. JUDGMENT ⊂⊃456(1)—AVOIDANCE FOR FRAUD—DILIGENCE.

Disclosure of diligence to discover the fraud is, after long delay, indispensable to obtain relief against judgment because of fraudulent representations, in the action in which judgment was obtained, on the tendered issue of ownership of cause of action to give jurisdiction on the ground of diversity of citizenship.

5. EQUITY ⊂⊃84—LACHES—GENERAL APPLICATION.

The doctrine of laches is an equitable principle applied to promote, but never to defeat, justice.

6. EQUITY ⊂⊃87(2)—LACHES—FOLLOWING STATUTE OF LIMITATIONS.

The doctrine of laches has no function when the analogous action or proceeding at law is not barred, and no unusual conditions invoke its application within the period of limitations to secure a just result.

7. MANDAMUS ⊂⊃143(2)—COLLECTION OF JUDGMENT—LACHES.

Owner of judgment against a county was guilty of no culpable laches or breach of duty, for which the court in its discretion should refuse mandamus to compel payment, though for 30 years after original judgment, during which the county amassed other large indebtedness, he did nothing except to obtain renewal judgments; application for mandamus being a year after the last judgment, and limitations for issue of execution being 10 years.

8. COUNTIES ⊂⊃192—TAX LEVY—RAILROAD AID BONDS.

The quoted words in Laws Mo. 1857, p. 62, § 14, and Laws 1859–60, p. 404, authorizing a county to subscribe for stock of a railroad company, issue bonds therefor, and "take proper steps to protect the interest and credit of the county," empower it to levy and collect sufficient taxes to pay the bonds.

9. COUNTIES ⊂⊃190(2)—SPECIAL TAX—LIMITATIONS.

Special law authorizing a county to levy and collect sufficient taxes to pay its bonds issued for railroad shares is not affected by general laws limiting amount of taxes to support the state government or to defray the expenses of a county.

10. MANDAMUS ⊂⊃152—PARTIES—PAYING JUDGMENT AGAINST COUNTY.

One writ of mandamus against all officers of a county charged with any duty in the co-operative or separate steps of levying, collecting, and pay-

ing a tax to satisfy a judgment against the county is proper, being in reality a proceeding against the county.

Stone, Circuit Judge, dissenting.

In Error to the District Court of the United States' for the Western District of Missouri; Arba S. Van Valkenburgh, Judge.

Mandamus by the United States, at the relation and to the use of J. T. Townsend, Jr., and others, against J. T. Bunch and others, County Judges of St. Clair County, Mo., and others. Peremptory writ issued, and defendants bring error. Affirmed.

John H. Lucas, of Kansas City, Mo. (L. E. Crook, of Osceola, Mo., on the brief), for plaintiffs in error.

William D. Tatlow, of Springfield, Mo. (Ewing Y. Mitchell, of Springfield, Mo., on the brief), for defendants in error.

Before SANBORN, CARLAND, and STONE, Circuit Judges.

SANBORN, Circuit Judge. The plaintiffs in error in this case are J. T. Bunch, W. H. Duncan, and W. P. Tucker, who are the county judges of St. Clair county, Mo., and William J. Mathews, the collector, George Virgil Higgins, the clerk, and E. M. Terry, the treasurer, of that county. They complain that the court below, notwithstanding their return to an alternative writ of mandamus served upon them, issued its peremptory writ commanding the judges to levy $2.50 on each $100 of the assessed value of the property in St. Clair county, and the collector, clerk, and treasurer to make return of their willingness to collect such levy and pay over the proceeds thereof to the relators, who are the owners of that certain judgment in favor of Joseph B. Townsend, Jr., J. Barton Townsend, and Charles C. Townsend, for $338,162.43, and against St. Clair county, rendered in the court below on the 4th day of May, 1914.

A brief statement of the origin of this judgment will materially aid in a ready understanding of the issues to be considered. Under an act to incorporate the Osage Valley & Southern Kansas Railroad Company, approved November 21, 1857 (Session Laws of Missouri 1857, p. 59), and an act to incorporate the Tebo & Neosho Railway Company, approved January 16, 1860 (Session Laws of Missouri 1859–60, p. 402), St. Clair county issued and delivered its bonds and coupons. Joseph T. Murtagh brought an action in the United States Circuit Court for the Western District of Missouri, the predecessor of the court below, against the county on some of these bonds and coupons, and on April 24, 1884, recovered a judgment against it thereon. Upon that judgment of April 24, 1884, Murtagh brought an action in the same court against the county and recovered a judgment against it thereon on November 29, 1895. Upon that judgment of November 29, 1895, Murtagh brought an action against the county in the same court and on December 16, 1905, recovering a judgment against it thereon. Upon that judgment of December 16, 1905, the relators, to whom Murtagh had assigned the judgment, brought an action against the county in the court below, and on May 4, 1914, recovered the judgment against it thereon for $338,162.43, upon which the peremptory writ of mandamus in this case is based.

[1] One of the reasons why the county judges insist that the writ should not have issued is that they allege in their return to the alternative writ that all these judgments were void because neither Murtagh nor the relators, all of whom were citizens and residents of states other than Missouri, were ever the real owners of the bonds or the coupons, or the judgments thereon, but that these bonds, coupons, and judgments were always owned by residents and citizens of the state of Missouri, so that no diversity of citizenship between the parties to the actions ever existed. But these alleged facts, even if they existed, constitute no legal reason why the peremptory writ should not issue, because the question whether they did or do exist is by these judgments rendered res adjudicata against the county, and therefore against its officers, who have no interest or standing here, save as its agents or representatives. These judgments against the county rendered, not only every issue and defense made by the county in the actions on which they are founded, but every issue and defense that might have been made by the county in these actions, res adjudicata against it and its officers and agents, as between them and the plaintiffs in those judgments. Cromwell v. County of Sac, 94 U. S. 351, 352, 24 L. Ed. 195; St. Louis, K. C. & C. R. Co. v. Wabash Railroad Co., 152 Fed. 849, 861, 81 C. C. A. 643, 655; Commissioners v. Platt, 79 Fed. 567, 571, 572, 25 C. C. A. 87, 91, 92; Des Moines Navigation Co. v. Iowa Homestead Co., 123 U. S. 552, 8 Sup. Ct. 217, 31 L. Ed. 202; In re Sawyer, 124 U. S. 200, 220, 8 Sup. Ct. 482, 31 L. Ed. 402. And the defense which the county judges here seek to interpose might have been made in any of the actions on which these judgments are based. It is too late to interpose this alleged defense now on this application for a mandamus upon the last judgment to compel the county officers to levy for and pay that judgment against the county, a mandamus which is the mere equivalent and substitute for an execution on a judgment against an individual. Ralls County Court v. United States, 105 U. S. 733, 734, 26 L. Ed. 1220; United States v. New Orleans, 98 U. S. 381, 397, 25 L. Ed. 225.

[2] Another contention which the county judges make why the writ should not have issued is untenable for the same reason. That contention is that the writ should not have issued, because they alleged in their return that the judgment of May 14, 1914, was void for the reason that more than 10 years had elapsed from the date of the original judgment sued on in said action, without revival or payment made thereon, and that under the laws of the state of Missouri such original judgment could only be enforced by revival or payment, and no suit could be brought thereon. Revised Statutes of Missouri 1909, § 1912. It is not admitted or intimated that this contention is sound, or that the alleged facts therein, if they exist, would have constituted any defense to any of the actions on the judgments which have been recited. Lafayette County v. Wonderly, 92 Fed. 313, 317, 34 C. C. A. 360, 364; Town of Fletcher v. Hickman, 165 Fed. 403, 404, 405, 91 C. C. A. 353, 354, 355; Cranor v. School District, 151 Mo. 119, 123, 52 S. W. 232; McFaul v. Haley, 166 Mo. 56, 62, 63, 64, 68, 65 S. W. 995; Tice v. Fleming 173 Mo. 49, 53, 55, 72 S. W. 689, 96 Am. St. Rep. 479; Goddard v. Delaney, 181 Mo. 564, 571,

80 S. W. 886; Bick v. Robbins, 131 Mo. App. 670, 674, 111 S. W. 612. Indeed, the authorities just cited leave little or no doubt that this contention cannot be maintained even if the facts are as alleged. It is not necessary, however, to discuss that question at length in this case, for if that contention is unsound, or if those alleged facts did not exist, or did not constitute any defense to any of the actions on the judgments, that contention and those alleged facts present no sound reason why the payment of the judgment of May 14, 1914, should not be enforced by mandamus. If, on the other hand, that contention is sound, and if those alleged facts did and do exist, then that contention and those facts constituted a good defense to the action which resulted in the judgment of May 14, 1914, which the county either made or might have made in that action, and therefore that judgment renders that contention, the existence of those alleged facts, and the validity of the defense founded thereon res adjudicata against the county and its officers and agents, and conclusively estops them from availing themselves thereof now to prevent the enforcement of the judgment by mandamus. Even if the decision of the court and its adjudication of this defense on May 14, 1914, were erroneous, nevertheless the judgment of that date is not void, may not be attacked collaterally, and is equally conclusive against the county and its judges, for the county had notice of the action which resulted in the judgment, had an opportunity to defend against it, the court had jurisdiction to hear and determine the defense now presented, had jurisdiction of the parties to and the subject-matter of the action, and the county did not avail itself of the only remedy it had, a writ of error to correct the error of the court, if it committed any, in the rendition of that judgment of May 14, 1914.

[3] Another reason why the county judges contend that the court below should not have issued the writ is that they alleged in their return that the judgments were void for fraud because the residents and citizens of Missouri, whom they alleged were and are the real owners of the bonds and coupons upon which Murtagh sued the county, caused Murtagh to represent, and he did falsely and fraudulently represent, himself to be the owner of these bonds and coupons on which he obtained his judgment in 1884, in order to give color to his claim of adverse citizenship of the parties in that action, and to perpetrate a fraud upon the court which heard that action; that these Missouri owners caused Murtagh to assign this judgment to the relators, and caused them to represent, and they did falsely represent, that they were the owners of the judgment assigned to them for the same purpose; and that the falsity of these representations was unknown to the county and was fraudulently concealed from it until the alternative writ of mandamus was issued on June 10, 1915. But these facts, if they existed, present no legal or sufficient reason why the peremptory writ should not issue. If they exist, the judgments and the adjudications these judgments evidenced were not void. At most they were available only upon proof of the alleged fraud, and that proof was incompetent and inadmissible save in a plenary suit in equity to avoid the judgments for the fraud. On their faces these judgments were regular and valid. There is no claim that the coun-

ty was not served with proper process in the actions which resulted in them, or that on the facts presented to the court it did not have plenary jurisdiction of the subject-matter or of the parties to them. They are therefore impervious to a collateral attack for fraud such as these judges here present. Until a direct suit is brought to avoid these judgments for the alleged fraud, and a decree of avoidance of them therefor is rendered they, and the things they adjudicated, are conclusive upon the parties to them, upon the officers and agents of the county and their privies, and they estop them from again litigating the matters thus adjudged. Christmas v. Russell, 5 Wall. 290, 305, 18 L. Ed. 475; Maxwell v. Stewart, 21 Wall. 71, 22 Wall. 77, 81, 22 L. Ed. 564; Peninsular Iron Co. v. Eells, 68 Fed. 24, 34, 35, 15 C. C. A. 189, 199, 200; Board of Com'rs v. Platt, 79 Fed. 567, 573, 25 C. C. A. 87, 93.

[4] Moreover, the judges disclose the fact in their return that the fraud they here plead was continually perpetrated from some time in 1884 until June 10, 1915, more than 33 years, that it was concealed during all this time, and that the county was not aware of it. The return fails, however, to allege how, by what acts or failures to act, by what representations or means, it was concealed, and it fails to state that the county exercised any diligence whatever, made any inquiry or search or endeavor, from 1884 to 1915 to ascertain who owned the bonds and coupons upon which the first judgment was obtained, or who owned the judgments, although the issue of their ownership was tendered to it in court in the actions which have been recited time and time again. The averments on this subject in the return, or rather the absence of averments upon it, fail to disclose that diligence to discover the alleged fraud which after such delay is indispensable to obtaining any relief on account of it, either by a plenary suit or otherwise. Wagner v. Baird, 7 How. 233, 258, 12 L. Ed. 681; Wood v. Carpenter, 101 U. S. 135, 137, 138, 140, 143, 25 L. Ed. 807; Kelley v. Boettcher, 85 Fed. 55, 62, 29 C. C. A. 14, 21; Rugan v. Sabin, 53 Fed. 415, 420, 3 C. C. A. 578, 582.

[5-7] Another reason which the judges argue should have prevented the issue of a peremptory writ is that such issue was an abuse of the discretion of the court below, because they alleged in their return that the relators were guilty of culpable laches, in that from April 28, 1884, no demand was made for the payment of the debt evidenced by the judgment of that date, no execution was issued upon it, and no application for a mandamus was made until that here under consideration; that more than 66 per cent. of the judgment bears interest at 10 per cent. compounded annually, that the indebtedness of the county, all of which is equally binding with the claim of the relators, is $5,000,000, and the assessable property of the county is $5,500,000. But from the time the county issued the bonds and coupons which are the subject of this litigation it owed Murtagh and the relators the duty to pay these bonds and coupons when they became due, and so to limit the amount of and so to pay its indebtedness with annual levies of reasonable amounts upon the property in the county as would enable it to discharge its debts as they matured. Neither Murtagh nor

the relators owed the county any duty to demand payment of their bonds, coupons, or judgments, and the actions against the county which have been recited left it under no misapprehension as to their desire for payment. It was the laches and recklessness of the county, and not those of Murtagh or the relators, that created its heavy indebtedness, and by failure to pay it, as it was in duty bound to do, permitted the accumulation of the unpaid interest. Moreover, the application for this mandamus is not founded on the judgment of April 28, 1884, but upon the judgment of May 4, 1914, and the application for the mandamus was made on June 10, 1915, little more than a year after the judgment was entered. The doctrine of laches is an equitable principle, which is applied to promote, but never to defeat, justice. It has no function when the analogous action or proceeding at law is not barred, and no unusual conditions invoke its application within the time fixed by the statute of limitations in the analogous action at law in order to secure a just result. Brun v. Mann, 151 Fed. 145, 154, 80 C. C. A. 513, 522, 12 L. R. A. (N. S.) 154; Broatch v. Boysen, 175 Fed. 702, 707, 99 C. C. A. 278, 283. It is generally applied in analogy to the statute of limitations relating to corresponding proceedings at law. The proceeding at law corresponding to the issue of a writ of mandamus to enforce payment of a judgment against a county is the issue of an execution upon a judgment against a private individual, and under the statutes of Missouri such an execution may issue at any time within 10 years after the entry of the judgment. Revised Statutes of Missouri 1909, § 2133. The result is that the relators have been guilty of no culpable laches, no breach of duty, that all the laches and failures to discharge duty disclosed in the case have been those of the county; a denial of the writ of mandamus under these circumstances would have tended to defeat justice and to promote injustice, and the court below committed no abuse of discretion in issuing it.

[8, 9] Finally, the judges take the position that the county court has no power to levy a tax of $2.50 on each $100 of the taxable property of the county, and for that reason the writ was erroneously issued. In support of this position they cite section 5, p. 1324, 2 Revised Statutes of Missouri 1854–55, which provides that the annual tax on real and personal property for the support of the government of the state shall not exceed one-fifth of 1 per cent. of the assessed value thereof; section 1, p. 1349, same statutes, which empowers the county courts "to levy such sum as may be annually necessary to defray the expenses of their respective counties," and declares that "the county tax shall in no case exceed the state tax, on the same subject of taxation, more than 100 per cent."; section 7, p. 96, General Statutes of Missouri 1865, which declares that the annual tax on real and personal property for the support of the government of the state, the payment of its debt, and the advancement of the public interest, shall be 40 cents on the $100 of assessed value; section 76, p. 121, of the statutes last cited, which empowers the county courts to levy such sums as shall be annually necessary "to defray the expenses of their respective counties," and declares that the county tax shall in no case exceed the state tax on the same subject of taxation more than 100 per cent. for the same

time, and section 165, p. 1193, Wagner's Missouri Statutes 1872, which authorizes county courts to levy such sums as may be annually necessary "to defray the expenses of their respective counties," and declares that the county tax shall in no case exceed one-half of 1 per cent. on all taxable property. The bonds and coupons here in litigation were issued subsequent to the statutes of 1865 and prior to those of 1872. But they were not issued to support the state government, nor to defray the expenses of the county. The county court was not authorized by any general statutes which have been cited to issue these bonds or coupons, nor to levy taxes to pay them, nor was its power to make such levies either prohibited or limited thereby, and this because the county was expressly empowered by special acts of the Legislature of Missouri "to subscribe to the stock of the company, * * * and for the stock subscribed in behalf of the county may issue the bonds of the county, to raise the funds to pay the same, and to take proper steps to protect the interest and credit of the county court" (Laws of Missouri 1857, p. 62, § 14; Laws of Missouri 1859–60, p. 404), and under that authority and no other the county issued the bonds and coupons, and the court below has commanded the levy to pay them. The statutes cited by the judges are general statutes which treat of the ordinary governmental expenses of the state and its counties and the method of raising revenue to pay them. The acts under which these bonds were issued were special acts which authorized the county to issue its bonds and coupons to pay for the county's authorized subscription for stock of a railroad company, and empowered its county court to levy and collect sufficient taxes to pay them, for in that way only can the county "take proper steps to protect the interest and credit of the county." These general and special statutes fall under the familiar rule that powers granted and privileges conferred by special acts are not affected by inconsistent general legislation on the same or on similar subjects; but the special acts and the general laws must stand together, the former as the laws of the particular cases and the others as the general laws of the land. South Carolina v. Stoll, 17 Wall. 425, 436, 21 L. Ed. 650; Board of Commissioners v. Ætna Life Ins. Co., 90 Fed. 222, 227, 32 C. C. A. 585, 590; Gowen v. Harley, 56 Fed. 973, 979, 6 C. C. A. 190, 196; Christie-Street Commission Co. v. United States, 136 Fed. 326, 333, 69 C. C. A. 464, 471.

The conclusion of the whole matter is that by the special acts which have been cited the state of Missouri conferred upon St. Clair county the power to issue the bonds and coupons in controversy; that from this grant of power the authority of the county court to levy sufficient taxes to pay them is conclusively implied in the absence of counter legislation (Loan Association v. Topeka, 20 Wall. 655, 22 L. Ed. 455; United States v. New Orleans, 98 U. S. 381, 25 L. Ed. 225); that this authority was expressly conferred upon the county court by the express grant of power to "take proper steps to protect the interest and credit of the county"; and that this power is not limited or restricted by the general statutes to which attention has been called. Further discussion of the reasons for these conclusions is omitted from this opinion, because they have been authoritatively set forth and the conclusions stated

have been adjudged by the Supreme Court in the consideration of analogous cases involving the construction of similar Missouri statutes. Ralls County Court v. United States, 105 U. S. 733, 736, 738, 26 L. Ed. 1220; Scotland County Court v. Hill, 140 U. S. 41, 45, 46, 11 Sup. Ct. 697, 35 L. Ed. 351; Seibert v. Lewis, 122 U. S. 284, 291, 292, 294, 296, 298, 7 Sup. Ct. 1190, 30 L. Ed. 1161; State ex rel. Hamilton v. Hannibal & St. J. Ry. Co., 113 Mo. 298, 303, 304, 305, 21 S. W. 14.

[10] Mathews, the collector, Higgins, the clerk, and Terry, the treasurer, of the county, alleged in their returns that they have no power to levy the tax required, and that whenever a levy of a tax has been made in the past they have discharged their respective duties in the recording, collection, and disbursement of it. But these returns present no sufficient reason why these parties should not be joined as respondents in the peremptory writ and commanded to perform their respective duties with reference to the recording of the proceedings, or the collection and disbursement of the taxes to be levied by the county judges. The object of this writ of mandamus is not only to levy the tax, but to collect it, and pay its proceeds over to the relators in part payment of their judgment, and all this the court may command the officers of the county to do, although under the law it may be necessary that some successive steps to accomplish it be done by some of the officers and others by other of the officers, by some co-operating and by others taking steps succeeding each other. One writ of mandamus against all officers of the county charged with any duty in the co-operative or separate steps for the levying, collection, and paying of a tax to the owners of a judgment is a proper and the most speedy and effective means to enforce the imposition of the tax upon the property of the county, its collection, and the payment of its proceeds upon the judgment. Labette County Com'rs v. Moulton, 112 U. S. 217, 218, 219, 223-227, 5 Sup. Ct. 108, 28 L. Ed. 698; Hicks v. Cleveland, 106 Fed. 459, 462, 45 C. C. A. 429, 432; Guthrie v. Sparks, 131 Fed. 443, 446, 451, 65 C. C. A. 427, 430, 435; Rose v. McKie, 145 Fed. 584, 589, 590, 76 C. C. A. 274, 279, 280.

Indeed, a proceeding for a mandamus against the judges of the county court and the other officers of a county whose duty it is to participate in either the levy, the collection, or the payment of a judgment against the county, to compel them to discharge their respective duties, is in reality a proceeding against the county itself. The duty to levy, collect, and pay is imposed upon all officers of the county so far as they respectively have any duty to perform, either in the levy, the collection, or the payment, and the writ binds, not only such officers named, but also their successors in office. Thompson v. United States, 103 U. S. 480, 483–485, 26 L. Ed. 521; People v. Collins, 19 Wend. (N. Y.) 56, 65; Commissioners v. Sellew, 99 U. S. 624, 627, 25 L. Ed. 333; Hollon Parker, Petitioner, 131 U. S. 221, 226, 9 Sup. Ct. 708, 33 L. Ed. 123; Warner Valley Stock Co. v. Smith, 165 U. S. 28, 33, 17 Sup. Ct. 225, 41 L. Ed. 621; United States ex rel. Bernardin v. Butterworth, 169 U. S. 600, 603, 18 Sup. Ct. 441, 42 L. Ed. 873; Murphy v. Utter, 186 U. S. 95, 99, 101, 102, 103, 22 Sup. Ct. 776, 46 L. Ed. 1070.

There was no error in the issue of the writ of mandamus and the judgment of the court below is affirmed, and this case is remanded to that court forthwith, with leave to the court below to make such changes in the order for the peremptory writ and in the writ itself as may be necessary by reason of the time which has elapsed since it was issued.

STONE, Circuit Judge (dissenting). The plaintiffs in error claim in their return that the judgments were void for fraud, because the residents and citizens of Missouri, who they claim were and are the real owners of the bonds, caused the plaintiffs in these various judgments to represent themselves falsely and fraudulently as the owners of the bonds, in order to give a colorable diversity of citizenship of parties, and thus lodge jurisdiction in the court; that these acts were intended to be and constituted frauds upon the court; that the falsity of these representations was unknown to the county, and was fraudulently concealed from it until after this alternative writ of mandamus was issued.

In my judgment this presents a question of fact going to the vitality of the judgments, which should have been determined in the trial court. It is true that under many circumstances the only orderly way to challenge judgments for such causes as here involved would be through an equitable proceeding. In this case, however, is the allegation made by the county as a statement of fact that it had no information of the fraud until after the issue of the writ in the present proceeding. This, in my judgment, creates a situation necessitating, and therefore authorizing, the presentation of the above defense in the mandamus proceeding.