# LABETTE COUNTY COMMISSIONERS & Others *v.* UNITED STATES *ex rel.* MOULTON.

IN ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE DISTRICT OF KANSAS.

Submitted October 24, 1884.—Decided November 17, 1884.

Mandamus will lie against county commissioners to compel steps to enforce a judgment recovered against an incorporated township within the county, when the law casts upon them the duty of providing for its satisfaction, and when mandamus is, in other respects, the proper remedy.

Under the statutes of Kansas referred to in the case and opinion, it was the duty of the county commissioners to make the proper levy of a tax for payment of bonds of a township in the county issued in payment of a subscription to railroad stock. The assent and concurrence of the trustee of the township was not necessary.

One writ of mandamus against all officers concerned in the separate but co-operative steps for levying and collecting a tax is the proper and effective remedy to enforce its collection.

The relator, on June 7, 1877, recovered a judgment in the Circuit Court of the United States for the District of Kansas, against the township of Oswego, in the county of Labette, in that State, for $9,221.34, with interest and costs, which is still in force and unpaid. That judgment was recovered upon coupons for unpaid interest on bonds, issued in the name and on behalf of Oswego township, by the Board of County Commissioners of Labette County, pursuant to the act of the Legislature of the State, entitled "An Act to enable municipal townships to subscribe for stock in any railroad and to provide for the payment of the same," approved February 25, 1870, and were payable to the Missouri, Kansas & Texas Railway Company or bearer.

On his information, an alternative writ of mandamus was allowed by the Circuit Court, June 10, 1881. The command of the writ was as follows: That "the said Board of County Commissioners of Labette County, State of Kansas, do forthwith levy and collect and pay over, or cause to be collected and paid over, to the relator, a tax on all the taxable property within the township of Oswego as constituted in the year 1870, and to do and perform in the manner and at the time required by law each and every and all singular the matters and things in respect to this special tax that are required by law by you to be done in respect to general taxation; and we do further command that you, the said clerk of the said board of the said county, do enter or record the levy of such tax, and enter the same on a tax roll or list, and record the proceedings of said board in respect to such taxation, and all proceedings that by law should be had and recorded in reference to taxation, and determine, extend and carry out the sum or sums of money to be levied or extended against each and every tract or lot of land, and all other taxable property, as provided by said laws, and set down such tax in a separate column, and complete the said tax roll or list in the manner and at the time required by law, and attach thereto your certificate and the seal of your office and the seal of your county and corporation, and that you deliver the same, so sealed and signed, to the treasurer of your said county, at the time and in the manner required by law, and

that you do and perform in the proper manner and at the proper time each and every act and thing by law required to be done in respect to taxation; and we command you, the said treasurer of said county, to accept and receive the said tax roll or list from said clerk, and to proceed as provided by law to collect such tax and to publish the list required by law, and to distrain for said tax, and to advertise lands for sale for the nonpayment of such tax, and to offer the same for sale, and to strike them off at such sale, all to be done in the manner and at the time required by law, and to take each and every and all and singular the process and proceedings, and do and perform each and every act and thing imposed upon you by the law in respect to the enforcement or collection of taxes, the same in respect to this tax as to other and general taxes, at the time and in the manner provided by law, and that you pay the said moneys to the relator, or into this court for his use."

To this the respondents jointly and severally demurred, and, for causes of demurrer, assigned the following:

1. Because the court has no jurisdiction of the persons of the respondents or the subject of the action.

2. Because of defect of parties defendant.

3. Because several causes of action are improperly joined.

4. Because the writ does not state facts sufficient to entitle the relator to the relief demanded against the respondents.

This demurrer was overruled by the Circuit Court, and a peremptory writ of mandamus awarded (see 2 McCreary, 25), to reverse which judgment this writ of error has been sued out.

*Mr. B. W. Perkins* for plaintiffs in error.—I. This is a proceeding to enforce against a county (Labette) a judgment obtained against a township in that county (Oswego). In Kansas a township is an independent corporation. Comp. Laws 1879, § 5965. The county officers were in no way connected with the former suit. Hence this is an original action; and it is settled that circuit courts have no original jurisdiction in actions of mandamus. *Marbury* v. *Madison,* 1 Cranch, 137; *McIntire* v. *Wood,* 7 Cranch, 504; *Bath County* v. *Amy,* 13 Wall. 244; *Graham* v. *Norton,* 15 Wall. 427.—II. The officers

of the township of Oswego should have been made respondents in this suit. The failure to make them so is a fatal defect. —III. There were several causes of action improperly joined. —IV. The writ did not state facts sufficient to entitle the relator (defendant in error) to the relief demanded against the respondents and against each and all of them. Mandamus is not a prerogative writ. It is in the nature of an ordinary action between the parties, and a writ of right only to the extent to which the party aggrieved shows himself entitled to the relief sought. *Gilman* v. *Bassett*, 33 Conn. 298; *Arberry* v. *Beavers*, 6 Texas, 457; *Kendall* v. *United States*, 12 Pet. 524; *Commonwealth* v. *Dennison*, 24 How. 66. Mandamus issues only when there is a clear legal right, without another adequate legal remedy. It never issues in doubtful cases. *Free Press Association* v. *Nichols*, 45 Vt. 7; *People* v. *Solomon*, 46 Ill. 415; *People* v. *Chicago*, 51 Ill. 1, 28; *United States* v. *Clark County*, 95 U. S. 769, 773. When the rights, or acts to be performed are wholly independent, not one writ, but several, will be awarded, and the application should be several. Hence the writ must be good as to all demands, and as against all respondents, or it is bad in whole and as to all. *People* v. *Yates*, 40 Ill. 126; *State* v. *Beloit*, 20 Wis. 79, 85; *Haskin* v. *Supervisors of Scott County*, 51 Mississippi, 406 and authorities cited. It is well settled that mandamus will not issue until the officer against whom it is asked is in default; and he is not in default until he has been in a condition to perform the act desired, and has, after demand by the party who has the right to have it performed, refused to perform it. The duties of these officers are distinct under the laws. A county clerk cannot act respecting a tax till the commissioners have acted; the treasurer cannot act until the county clerk has acted. This proceeding asks that the commissioners shall levy a tax and deliver the tax roll to the clerk; that the clerk shall enter it and deliver the roll to the treasurer; that the treasurer shall collect the tax; and this though none of the officers were parties to the original suit. How could the commissioners be in default if they were not parties to the original suit? or the clerk be in default till the treasurer had performed his duty?

or the treasurer be in default until the clerk had performed his? We know that the recent case of *Cherokee County* v. *Wilson*, 109 U. S. 621, will be cited against us on these points; but we ask a reconsideration of the question.

*Mr. S. E. Brown* for defendant in error.

MR. JUSTICE MATTHEWS delivered the opinion of the court. He stated the facts in the foregoing language, and continued:

The objection that the Circuit Court had no jurisdiction to issue its mandamus to the plaintiffs in error is based upon the supposition that because they are not parties to the judgment against Oswego Township, and are not officers of or representatives of that municipal corporation, but are officers of the county of Labette, the proceeding against them is the exercise of an original jurisdiction, which does not belong to that court. It is quite true, as it is familiar, that there is no original jurisdiction in the Circuit Courts in mandamus, and that the writ issues out of them only in aid of a jurisdiction previously acquired, and is justified in such cases as the present as the only means of executing their judgments. But it does not follow because the jurisdiction in mandamus is ancillary merely that it cannot be exercised over persons not parties to the judgment sought to be enforced. An illustration to the contrary is found in that class of cases of which *Krippendorf* v. *Hyde*, 110 U. S. 276, is an example.

The question is, whether the respondents, to whom the writ is addressed, have the legal duty to perform, which is required of them, and whether the relator has a legal right to its performance from them, by virtue of the judgment he has already obtained. If so, then they are, as here, the legal representatives of the defendant in that judgment, as being the parties on whom the law has cast the duty of providing for its satisfaction. They are not strangers to it, as being new parties, on whom an original obligation is sought to be charged, but are bound by it, as it stands, without the right to question it, and under a legal duty to take those steps which the law has prescribed as the only mode of providing means for its payment.

It is next objected that the trustee of Oswego Township is a necessary party in the mandamus, as the officer charged by law with the duty of levying and collecting the tax for the payment of judgments against it; or at least whose concurrence in the levy is made necessary to the valid action of the county commissioners.

The statutes of Kansas which govern this question were considered by this court in the case of *Cherokee County Commissioners* v. *Wilson*, 109 U. S. 621. It was there held to be the duty of the county commissioners, when the office of township trustee was vacant, to levy the tax upon the township property for the payment of township debts, under the general law regulating the subject. In the present case it does not appear that there was no trustee of the township who could act. But we are of opinion that in regard to bonds issued for railroad purposes, and to judgments rendered thereon, for principal or interest, as in the present case, the concurrence of the trustee of the township is not necessary to the levy of the tax necessary for their payment, but that the duty is laid upon the commissioners of the county to levy the tax upon the township for that purpose. This we think is the fair result of a comparison of the various provisions on the subject contained in the original legislation under which the bonds were issued, with the amendments passed and in force at the time these proceedings were begun, including the act of March 9, 1874, Session Laws of Kansas, 1874, p. 41, and sec. 6, ch. 107, Laws of Kansas, 1876. Indeed, it was expressly decided in *Cherokee County Commissioners* v. *Wilson, ubi supra*, that in no event was the assent and concurrence of the township trustee necessary to the action of the commissioners of the county, as the latter were required to levy all taxes required by law upon the township, even though the township trustee refused to consent; and when it was a matter of discretion and expediency, the judgment of the county commissioners was paramount. As to the bonds upon which the relator's judgment is founded, we think it was the legal duty of the commissioners of the county to make the proper levy of a tax for their payment, without regard to the trustee of the township.

It is further objected that the demurrer to the alternative writ of mandamus should have been sustained by the Circuit Court, on the ground of a misjoinder of parties defendant, it being alleged that the duty required of the county clerk and that of the county treasurer were separate and ·distinct from each other, and from that of the county commissioners, that neither the clerk nor the treasurer could act in the collection and payment of the tax until after its levy by the commissioners, and that as to each of those officers it was shown on the face of the writ that he could not be in default.

The clerk and the treasurer do not, it will be observed, make returns to the alternative writ of their willingness to perform their several duties in reference to this tax when the time for them to act shall arrive; nor are they satisfied with several demurrers to the writ, on the single ground that, as to them, it is premature and therefore defective by reason of the misjoinder; but they join with the county commissioners in demurring to the writ, on the ground that it does not state facts sufficient to entitle the relator to the relief demanded. Their position in the record is not altogether consistent with the presumption they claim the benefit.of, that they will each perform the duty required of him by the law when the time arrives for its punctual performance.

But the objection does not apply in the present case.

Speaking of the writ of *mandamus*, as employed here, this court, in *Riggs* v. *Johnson County*, 6 Wall. 166–198, described it as "a proceeding ancillary, to the judgment which gives jurisdiction, and, when issued, becomes a substitute for the ordinary process of execution to enforce the payment of the same, as provided in the contract." An ordinary execution upon a judgment at law commands the officer to whom it is addressed to perform a series of acts—to levy on goods and chattels, lands and tenements of the judgment debtor, and, if on the latter, to appraise their value, to advertise the same for sale, to make sale of the same at the time and place and in the manner prescribed by law, and apply the proceeds to the payment of the judgment—and these are to be performed successively. There is no incongruity in such a writ. It would not be com-

plete or effective without it embraced all the particulars which, in law, are essential to the full duty contemplated by it, the performance of which is necessary to secure its benefits to the party who sues it out.  So here, the object of this writ, though including many particular steps in obeying it, is, nevertheless, single, in that it is intended to obtain an end which is the result of the means prescribed.  The command of the writ is to perform the general duty, which is obeyed by performing the successive steps which constitute it.  Clearly, the writ would not be chargeable with duplicity if addressed to one person, although it commanded the performance of a series of acts, each of which was a condition of the performance of its successor, where the right of the relator consists in the result legally flowing from the combined whole.  It can make no difference in principle that in a particular case the law, instead of casting the performance of the entire duty upon a single person, has divided it among several, each to perform but one act in the series, and each acting independently and not as responsible to any of the others, but all required to co-operate in the attainment of the single result, and by a continuous and uninterrupted succession, so as to preserve the integrity and unity of the performance as an entire duty.

The relator is entitled to an effective writ, and he can have it only on the terms of joining in its commands all those whose co-operation is by law required, even though it be by separate and successive steps, in the performance of those official duties, which is necessary to secure to him his legal right.  Otherwise the whole proceeding is liable to be rendered nugatory and abortive.  For the levy and collection of a tax is not only an entire thing, although accomplished by successive steps and by separate officials, but is a continuous transaction, each one taking it up where his predecessor left it; and if the relator was compelled to obtain a separate mandamus against each person charged with the performance of a single service, the very delay and break in the continuity of the process might be, by the terms of the law itself, a sufficient answer to each succeeding writ; and if it were not, it would prolong the proceeding to such indefinite length as to deprive the writ of the very

character of a remedy. So that, if such a precedent could be regarded as an innovation upon established practice, it could not be considered a departure from the principle of the jurisdiction; for, to quote what Lord Mansfield said in *Rex* v. *Barker*, 3 Burr. 1267, "The original nature of the writ, and the end for which it was framed, direct upon what occasions it should be used. It was introduced to prevent disorder from a failure of justice, and defect of police. Therefore it ought to be used upon all occasions where the law has established no specific remedy, and where in justice and good government there *ought* to be one."

The present writ, however, is not without precedent, modern and ancient. It is, indeed, precisely like that which was passed upon in the case of the *Cherokee County Commissioners* v. *Wilson, ubi supra*, although there the objection was made by the commissioners alone, who, it was held, were not entitled to complain on that account.

In the case of *Farnsworth* v. *Boston*, 121 Mass. 173, cited and approved in *Attorney-General* v. *Boston*, 123 Mass. 460, where an owner of land, assessed to pay for an improvement, had, under the statute, a right to surrender his estate, and receive compensation for its value, which the city council sought to defeat by an attempted vacating of the assessment, which it was held they could not lawfully do, a mandamus was issued, not only to the city council to take the land, but also to the mayor to sign the description and statement, although he could not do so, or be in default for not doing so, until the city council had passed an order taking the land, and although he might, by the statute, sign the description and statement at any time within sixty days after the taking.

The case of *The King* v. *The Mayor and Burgesses of Tregony*, 8 Mod. 111, was a motion for a peremptory *mandamus*, where a former *mandamus* was directed to the mayor and burgesses of Tregony, in Cornwall, commanding them, "*quod eligetis et jurctis majorem, &c., secundum authoritatem vestram, &c.*" "It was moved," says the report, "for a *supersedeas* to that *mandamus*, for that the writ was not good, because it was directed to the mayor and burgesses to elect and swear a

mayor, whereas the power of electing is only in the burgesses, and the power of swearing in the mayor alone; so that the mayor cannot make a return of this writ as directed to him to elect; nor the corporation as directed to them to swear a mayor, so that if the burgesses should make a return as to the swearing part, they would be usurpers, and if they do not make a return, they will be in contempt of this court. Besides, it is incongruous for a *mandamus* to be directed to swear a mayor not yet elected," &c. But the court were all of opinion in this case that they ought to make a return, for the writ commanding them "*quod eligetis et juretis secundum authoritatem vestram,*" it shall be taken *reddendo singula singulis*, and to be the return of both. Accordingly, a return having been made, the objection was renewed, and was further argued, but the court remained of the same opinion on this point, and on the final argument for a peremptory writ, it was finally said (p. 128): "The objection to the writ is that it is directed 'To the mayor and burgesses to elect and swear a new mayor,' which is wrong; for though the mayor and burgesses are to elect, yet it is the mayor alone who must administer an oath to the person, for the burgesses cannot; therefore, this direction is wrong. But this may receive a very plain answer by a reasonable construction of the matter distributively in the manner as directed by the writ, the words being '*eligetis et juretis secundum authoritatem vestram,*' so that it is a writ to the body corporate to elect, they having the inheritance as to the election of a mayor; and it is a writ to the mayor, who has a special power to swear the person elected into the office; so that *reddendo singula singulis*, the writ is well directed. And it could not be otherwise, unless there had been two writs granted, the one to elect, and the other to swear the person elected; so that this, being a ministerial writ, is so far good."

The same point had been previously raised and decided in *The King* v. *The Mayor of Abingdon*, 1 Ld. Raym. 559, by Chief Justice Holt, who said: "There have been a hundred writs directed to the mayor and aldermen of London in cases of acts to be done by them separately." The report continues: "The second exception to the writ was to that part of the writ

which commanded the mayor to swear Sellwood and Spinnage, that they sued this too soon; for a *mandamus* ought not to go until the officer has refused to do the act and his duty; or at least that there was some person who had right to have the thing done.to them; which was not in this case, because they were not yet elected. That this was to sue a *mandamus quia timet*, and, like the case of an original bearing *teste*, before the cause of action accrued. But *per* Holt, Chief Justice, it will. be well enough in this case, because they are acts depending the one upon the other; first, they ought to elect him, and then the mayor ought to swear him. And the writ was held good and the return disallowed, and a peremptory *mandamus* was granted."

We are of opinion, therefore, that there is no error in the judgment of the Circuit Court, and it is accordingly

*Affirmed.*