## Richmond.

SHUMATE v. SUPERVISORS OF FAUQUIER COUNTY.

March 8th, 1888.

1. RES JUDICATA—*Same point—Different suits.*—Judgment upon a direct point in former suit, is conclusive upon the same point in latter suit, though the objects of the two suits be different. *Routledge* v. *Hislop,* 105, E. C. L., 547.

2. IDEM—*Quo warranto.*—Judgment on writ of *quo warranto,* or on information in the nature of said writ, is conclusive. *Howison* v. *Weeden,* 77 Va., 704.

3. IDEM—*Office—Salary*—Judgment in *quo warranto* determining respondent's right to hold the office, involves an adjudication of his right to receive the salary.

Petition for *mandamus* to compel board of supervisors of Fauquier county to issue a warrant upon treasurer of said county for $1,250, which sum it is alleged, is due petitioner as his salary as county court judge from March 1st, 1884, to January 1st, 1886. Opinion states the case.

*R. R. Campbell,* for the petitioner.

*Brooke & Scott,* for the respondents.

LEWIS, P., delivered the opinion of the court.

The petitioner alleges that he was the *de jure* judge of Fauquier county, and entitled to the salary annexed to the office,

for the period from March 1st, 1884, to January 1st, 1886, but that upon presentation of his claim, the respondents refused to recognize him as such, on the ground that he had been removed from office by the legislature, and one Edward M. Spilman elected in his stead.

He insists, however, that such alleged removal was in violation of the constitution, and without legal effect, for three reasons: 1. Because the proceedings against him were instituted and conducted by the legislature without lawful notice; 2. Because neither the joint resolution to proceed against him, nor the subsequent joint resolution attempting to remove him from office, was presented to the governor in conformity with the eighth section of the fourth article of the constitution, which provides that "every bill which shall have passed the senate and house of delegates, and every resolution requiring the assent of both branches of the general assembly, shall, before it becomes a law, be presented to the governor," for his approval, etc.; and 3. Because independently of these considerations, the proceedings were void, because they were based upon charges which could be constitutionally acted on by the legislature only under those provisions of the constitution relating to impeachment.

There were two charges. The first was incompetency; the second was as follows: "That the said W. B. G. Shumate did aid one Benjamin George in a manifest, willful, and partisan violation of the statute of Virginia, which prohibits and makes it a misdemeanor for any clerk or other officer to issue his blank receipt for any such tax with a view to the same being filled at a future time, or to give receipt for such tax, except in cases in which the money is paid at the time of executing such receipt."

"Wherefore," it is further alleged in the petition that, "the petitioner was impeached without a trial before the senate, as the constitution requires; that said impeachment was con-

sequently null and void," and that petitioner's claim for salary was therefore improperly rejected.

To this petition the respondents, the board of supervisors, demur and also answer. The defence set up in the answer is based upon three grounds: 1. That *mandamus* is not the proper remedy, the petitioner having a specific and adequate legal remedy by appeal from the action of the board, rejecting his claim, to the county or circuit court of Fauquier county, pursuant to the statute in such case made and provided; 2. That petitioner was lawfully removed from office by the legislature, and therefore that his claim was rightly rejected; and 3. That the matter in controversy is *res judicata.*

The grounds upon which the writ is prayed for in the petition involve questions which are certainly very grave and important in their character, and which, if they properly arose in the present case, would receive the most careful and deliberate consideration of the court. But in our opinion they do not arise, and cannot therefore be properly considered, because we are of opinion that the defence of *res judicata* is sustained by the record, and that this view of the case fairly precludes the consideration of any other question.

It appears that soon after the election of Spilman by the legislature to the office of county court judge in 1884, a proceeding in the nature of a *quo warranto* was instituted in the circuit court of Fauquier county, at the instance of the petitioner, to try the title to the said office, and in that proceeding judgment was rendered for the defendant, Spilman. A copy of the record is exhibited with the answer in the present case, from which it appears that the grounds relied on by the petitioner in that proceeding were precisely the same as those upon which he now relies—namely, that the proceedings against him by the legislature were taken without lawful notice, and were, besides, unconstitutional and void. The circuit court, however, held otherwise, and gave judgment against

him, whereupon the case on a writ of error was brought to this court. Here it lingered on the docket, without any effort being made by the parties to obtain a hearing, until after the expiration of the term for which the petitioner had been elected, and when finally called, it was dismissed, because the term had expired. So that the judgment of the circuit court, which in effect adjudged that the petitioner had been lawfully removed, and that Spilman was entitled to the office, remains unreversed and in full force.

This being so, the petitioner is undoubtedly estopped by that judgment, since it virtually determined the point now in controversy; and the effect is the same, whether the judgment be erroneous or not, as to which we express no opinion. Freem. Judgm. (3d ed.), § 249; *Case* v. *Beauregard*, 101 U. S., 688; *Wilson's Ex'or* v. *Deen*, 121 Id., 525, 534, and cases cited.

As to the identity of subject matter, there can be no doubt. The judgment determining that the petitioner had no title to the office, necessarily determined that he was no longer entitled to receive its emoluments, though no claim for salary was specifically made, and could not have been regularly made, in that proceeding. An office is defined to be a right and correspondent duty to exercise a public or private trust, and to take the emoluments belonging to it; and as was said in *Blair* v. *Marye, Auditor*, 80 Va., 485, "the salary follows the office as the shadow follows the substance." The right to the salary now sought to be recovered was therefore necessarily involved in the adjudication in the former case, and the principle is well settled that a judgment is conclusive if upon the direct point, though the objects of the two suits be different. Freem. Judg., (3d ed.) secs. 254, 249.

This was decided in *Routlege* v. *Hislop*, 2 El. & El., 549 (105 Eng. C. L., 547), where it was held that varying *the form* of claim does not effect the application of the rule, where the claim itself is the same. That was the case of a servant, who having been discharged from the service of her employer,

entered a plaint against him in the county court, to recover damages for a breach of contract, alleging that the defendant had discharged her without reasonable cause; but judgment was given against her. Afterwards she made a complaint on oath before a justice of the peace, to recover a certain sum as wages, again alleging that her discharge was without just cause. On appeal, it was held by the court of Queen's Bench, after a review of the authorities, that the judgment in the first case was a bar to the second. In delivering judgment, Cockburn, C. J., said: "It was urged before us that the form of the claim before the justices was different from that made in the county court, and that the jurisdiction was different; but it was admitted, and indeed could not be denied successfully, that the question raised by the plaint in the one case, and the complaint on oath in the other, was the same, namely, whether *the discharge of the plaintiff was without just cause.*" And accordingly judgment was given for the defendant. This case is cited in 7 Rob. Pr., 170, and is directly in point.

And it is equally clear that although the respondents were not formally parties, and could not have been made actual parties to the proceeding in the circuit court, yet that the judgment rendered therein is binding upon them, as being the parties upon whom the law has cast the duty of making provision for the payment of the salary of the county court judge of Fauquier county. Hence, they are not strangers to that proceeding, and could not, if they would, question the judgment therein. *Labette County Commissioners* v. *Moulton*, 112 U. S., 217; *Harshman* v. *Knox County*, 122 Id., 306.

A judgment on a writ of *quo warranto*, says Blackstone is final and conclusive even against the crown. And in 7 Com. Dig., 201, it is said that "the judgment in a *quo warranto* is final, for it is in the nature of a writ of right, and therefore, if judgment be against the king, the king shall be forever bound as to the thing adjudged," citing 1 Sid., 86 and 1 Roll. Abr., 112. And such substantially is the effect of a judgment

in the more modern proceeding by information in the nature of a *quo warranto,* which has taken the place of the ancient writ of *quo warranto,* and which, though originally a criminal method of prosecution to punish the usurper as well as to oust him from the franchise, has long since lost its criminal character in everything except form, and is now employed merely for the purpose of trying the civil right, seizing the franchise, or ousting the wrongful possessor.    3 Bl. Com., 263; 4 Min. Insts., 500; High Extr. Rem., secs., 591, 697; *Birchett* v. *Commonwealth,* 2 Va. Cas., 51; *Commonwealth* v. *James River Co., Id.,* 191; *Royall* v. *Thomas,* 28 Gratt., 130; *Bland & Giles Co. Judge case,* 33 *Id.,* 443; *Ames* v. *Kansas,* 111 U. S., 449.    (For a form of a judgment of amotion, see *Commonwealth* v. *Fowler,* 11 Mass., 339.)

In England, and in many of the American States, there are statutes regulating the practice in proceedings by information in the nature of a *quo warranto,* but in Virginia the common law on the subject, up to the present time, remains unaltered; (the Code of 1887 not yet having gone into effect) so that a judgment in such a proceeding with us is not less conclusive against the relator, where there is one, than it is at common law against the crown; and the rule which gives it this effect is both reasonable and necessary.    For in such a proceeding, the defendant being called on by the commonwealth to show by what title (*quo warranto*) he holds the office in controversy, the burden of proof is not, as in ordinary actions, upon the plaintiff, but upon the defendant; and not only is this so, but the latter, to succeed, must show *a complete* title.    Therefore a judgment for the defendant ought to be considered conclusive, otherwise the title to an office could never be finally settled by judicial determination.    *The King* v. *Leigh,* Burr., 2143; High Extr. Rem., § 712.    And the rule is reciprocal, so that the judgment, whether it be against the defendant or against the relator, bars the party against whom it is rendered from again asserting title to the office founded

upon a state of facts existing before the original proceedings. High, § 748.

A different rule would be mischievous in its consequences, and ought not to be recognized. No authority for any such doctrine has been cited, and doubtless there is none to be found. On the other hand, it would seem, in the absence of any statute on the subject, that the judgment of the circuit court ·above mentioned is not only binding upon the parties now before the court, but upon all the world. The proceeding by *quo warranto*, says Starkie, is analogous to a proceeding *in rem.* 1 Stark. Ev., 241. And in Bull. N. P., 231, it is laid down that " though regularly no recovery or judgment is to be admitted in evidence but against parties and privies, yet under some circumstances they may; as in the case of *The King* v. *Hebden*, 2 Strange, 1109, where in an information in the nature of a *quo warranto*, a judgment of ouster was allowed to be given in evidence to prove the ouster of a third person by whom the defendant was admitted." And in such a case the judgment is conclusive unless impeached for fraud. *The King* v. *The Mayor of York*, 5 T. R., 66. See also 7 Rob. Pr., 5.

In *Hart* v. *Harvey*, 32 Barb., 55, it was said by the supreme court of New York that the trial of the right to an office in an action in the nature of a *quo warranto* is conclusive; that the judgment finally determines the title, and puts an end to the litigation. And in *Harrison* v. *Weeden*, 77 Va., 704, this court decided that the title to the office of judge of the county court of Prince William county was finally determined by the judgment in *ex parte* Meredith, 33 Gratt., 119, which was an amicable proceeding by *habeas corpus*. " If the former adjudication," said Judge Richardson, speaking for the court, " embraced, as unquestionably it did, the period as to which both parties assert claim here, then the question is *res judicata*, and the vested rights ascertained and determined thereby cannot be questioned or disturbed in any way by a new or other suit, before this or any other tribunal."

These authorities are sufficient to show that the defence of *res judicata* is well founded in the present case, and that the rule *nisi* must, therefore, be discharged.

FAUNTLEROY, J., concurred in the result.

MANDAMUS DENIED.