964 F.2d 180
 140 L.R.R.M. (BNA) 2456, 122 Lab.Cas. P 10,256,
15 Employee Benefits Cas. 2041
 UNITED STATES of America, Plaintiff-Appellee,
v.
INTERNATIONAL BROTHERHOOD OF TEAMSTERS, CHAUFFEURS,
WAREHOUSEMEN AND HELPERS OF AMERICA, AFL-CIO, et
al., Defendants.
In re COMMITTEE TO ELECT RON CAREY, Complainant-Appellee,
Western Conference of Teamsters Pension Trust Fund and
Joseph W. Ballew, Respondents-Appellants,
Michael H. Holland, Election Officer, IBT, Intervenor.
 No. 301, Docket 91-6140.
 United States Court of Appeals,
Second Circuit.
 Argued Oct. 9, 1991.
Decided May 19, 1992.
 
 Robert A. Gordon, San Francisco, Cal. (C. Douglas Floyd, Pillsbury, Madison & Sutro, San Francisco, Cal., Gibson, Dunn & Crutcher, Stephen E. Tallent, Richard L. Dashefsky, William F. Highberger, New York City, on the brief), for respondents-appellants.
 Steven C. Bennett, Asst. U.S. Atty., New York City (Otto G. Obermaier, U.S. Atty., Edward T. Ferguson, III, Asst. U.S. Atty., on the brief), for plaintiff-appellee.
 Susan Davis, New York City (Earl R. Pfeffer, Cohen, Weiss and Simon, on the brief), for complainant-appellee.
 Barbara J. Hillman, John J. Sullivan, Washington, D.C., submitted a brief for intervenor.
 Before OAKES, Chief Judge, VAN GRAAFEILAND and NEWMAN, Circuit Judges.
 JON O. NEWMAN, Circuit Judge:
 
 
 1
 This appeal raises the related issues of the extent to which a non-party is bound by a judgment and the extent to which a non-party may be subjected to court orders pursuant to the All Writs Act, 28 U.S.C. § 1651 (1988). The issues arise on an appeal by the Western Conference of Teamsters Pension Trust Fund ("the Trust") and Joseph W. Ballew, the co-chairman and secretary of the Trust, from the May 13, 1991, order of the District Court for the Southern District of New York (David N. Edelstein, Judge). 764 F.Supp. 817. That order affirmed an order of the Independent Administrator supervising certain aspects of the implementation of a consent decree ("the Consent Decree") entered in litigation brought by the United States against the International Brotherhood of Teamsters ("IBT"). See United States v. International Brotherhood of Teamsters, 931 F.2d 177 (2d Cir.1991) ("Election Rules Decision"). The order of the Independent Administrator purported to remedy violations of Elections Rules issued by the Elections Officer appointed pursuant to the Consent Decree. The Trust and Ballew were alleged to have violated the Election Rules by reason of a letter Ballew wrote concerning pension benefits available under the Western Conference of Teamsters Pension Plan ("WCT Plan") and a plan ("the Local 804 Plan") proposed by Ron Carey, the President of IBT Local 804 and a candidate for president of the IBT. The parties disputed whether Ballew's letter was prohibited political campaigning or permissible distribution of pension benefit information.
 
 
 2
 We conclude that the appeal is moot to the extent that it concerns equitable remedies, and that the portion of the order requiring Ballew to reimburse the Fund is a damage remedy that could not properly be entered either by virtue of the Consent Decree or the All Writs Act. We therefore dismiss in part and vacate in part.
 
 Facts
 
 3
 The circumstances giving rise to the Consent Decree and the mechanisms resulting from the decree to monitor the 1991 IBT election have been recounted before and need not be repeated. See United States v. International Brotherhood of Teamsters, 948 F.2d 98, 100-101 (2d Cir.1991) ("Yellow Freight"); Election Rules Decision, 931 F.2d at 180-81; United States v. International Brotherhood of Teamsters, 905 F.2d 610, 613 (2d Cir.1990) ("Friedman and Hughes"). Suffice it to note that the Consent Decree authorizes the appointment of an Elections Officer, with authority to supervise the 1991 IBT election for international officers, and an Independent Administrator, with authority to adjudicate disputes concerning election rulings of the Elections Officer. Rulings of the Independent Administrator may be appealed to the District Court.
 
 
 4
 During his campaign for president of the IBT, Carey had occasion to discuss the virtues of the Local 804 Plan. In January 1990 Ballew sent the Trust's administrators a copy of the Local 804 Plan and requested an analysis of it "[s]ince this plan will be one that our Western Conference plan will be compared to." Ballew received the requested analysis in March 1990. In November 1990, Jack R. Bookter, an officer of IBT Local 278 in San Francisco and a candidate on the slate opposing Carey, sent Ballew a videotape of a campaign presentation in which Carey favorably compared the Local 804 Plan to other plans including the WCT Plan. Carey suggested that IBT members make inquiries concerning the benefits available under their own plans.
 
 
 5
 Ballew's response to Bookter in a letter dated November 28, 1990 ("the Ballew letter"), gave rise to the pending controversy. The Ballew letter analyzes various features of the Local 804 Plan and the WCT Plan, pointing out some adverse aspects of the former and some beneficial aspects of the latter. An introductory sentence stated, "Mr. Carey is an effective speaker, but with respect to pension matters, I think he takes great liberties with the facts and implies that the Local 804/UPS Pension Plan is the model of design and a reality for other pension plans to obtain." The source for the comparisons made in the Ballew letter was the March 1990 analysis that Ballew had requested from the Trust administrators.
 
 
 6
 Ballew sent copies of his letter to the union-selected trustees of the Trust. One recipient, Chuck Mack, an officer of IBT Local 70 in Oakland, sent copies of the Ballew letter to all Local 70 officers. Bookter sent copies to the officers and members of Local 278.
 
 
 7
 The Committee to Elect Ron Carey filed a protest with the Elections Officer, alleging that the Trust and the local unions had made prohibited campaign contributions by preparing and distributing partisan materials. The Elections Officer upheld the protest. He cited provisions of the elections rules (a) prohibiting the use of union funds or resources for campaign purposes unless the union is compensated and all candidates are given equal access to such resources, Elections Rules, Article X, § 1(b)(3); (b) prohibiting any employer from contributing anything to a campaign, id § 1(b)(1); and (c) extending, in the view of the Elections Officer, the prohibition against employer contributions to trusts, id. § 1(a). The Elections Officer ruled that Ballew's request to the trust administrators for a comparison of the pension plans was politically motivated and that the distribution of the Ballew letter was a contribution that violated the Elections Rules.
 
 
 8
 As relief, he ordered the Trust and Ballew to cease and desist from any further contribution "where the purpose, object or foreseeable effect of that contribution is to influence the election of a candidate for delegate, alternate delegate or International Officer of the IBT," and ordered Ballew to reimburse the Trust for "all costs and expenses associated with the preparation and dissemination of the comparison between the Trust and the Local Union 804 pension plan" and to distribute at his own expense a prescribed form of notice to trustees of the Trust and any IBT member to whom he sent, or caused to be sent, the Ballew letter. The notice is required to state that the Trust "disclaims" the Ballew letter and "affirmatively states that neither the letter nor its contents are endorsed by" the Trust. Other relief, not at issue on this appeal, was ordered against Bookter, Mack, and the Western Conference of Teamsters.
 
 
 9
 The order of the Elections Officer was affirmed by the Independent Administrator, with a modification not pertinent to this appeal, and the latter's order of affirmance was in turn affirmed by the District Court. After oral argument, we were informed that the election has been held and Carey was elected president of the IBT.
 
 Discussion
 
 10
 Initially we note that much of the controversy has become moot by reason of the occurrence of the IBT election. Carey's election victory ends the controversy with respect to Ballew's obligation to send a notice on behalf of the Trust disclaiming the Ballew letter. Though in some circumstances a cease and desist order concerning an election rule violation might remain viable after an election, see, e.g., NLRB v. Raytheon Co., 398 U.S. 25, 28, 90 S.Ct. 1547, 1549, 26 L.Ed.2d 21 (1970), the order in this case has become moot because of the expiration of the court officers' authority. By the terms of the Consent Decree, the authority of the Elections Officer and the Independent Administrator terminates upon certification of the 1991 IBT election results, except for prompt investigation of certain post-election claims of election irregularity. Consent Decree § B. Thus a live dispute remains only with respect to Ballew's monetary obligation to reimburse the Trust.
 
 
 11
 In determining whether the Elections Officer had authority to impose a monetary obligation upon Ballew, we consider first whether Ballew is bound by the Consent Decree and, if not, whether he may nonetheless be ordered to reimburse the Trust pursuant to the All Writs Act. If the Consent Decree of its own force binds Ballew, then, like any party bound by a judgment, he may be ordered to comply with its terms and may be held accountable for violating its terms. Even if the Decree of its own force is not binding upon him, he may still be subject to the District Court's authority to issue orders pursuant to the All Writs Act, in which event the issue becomes whether the monetary reimbursement order is the type of order permitted under the Act.
 
 
 12
 A. Does the Consent Decree authorize Ballew's Monetary Obligation?
 
 
 13
 The Independent Administrator found that, with respect to the matters pertinent to this appeal, Ballew acted "simply as a trustee of the Trust," and the District Court ruled that "Ballew sent his letter in his official capacity as trustee of the Trust." Therefore, our initial question is whether the Consent Decree, of its own force, binds Ballew in his capacity as a trustee of the Trust such that an obligation may be imposed upon him pursuant to the election supervision machinery established by the decree.
 
 
 14
 Neither the Trust nor Ballew in his capacity as a trustee were parties to the litigation in which the Consent Decree was entered, and normally a person is not bound by an in personam judgment entered in litigation in which he is neither designated as a party nor served. See Martin v. Wilks, 490 U.S. 755, 109 S.Ct. 2180, 104 L.Ed.2d 835 (1989); Hansberry v. Lee, 311 U.S. 32, 61 S.Ct. 115, 85 L.Ed. 22 (1940). Limited exceptions exist for persons who are agents of, or acted in concert or participation with, parties bound by a judgment, see Fed.R.Civ.P. 65(d), or who were adequately represented in the litigation that resulted in the judgment, see Martin v. Wilks, 490 U.S. at 762 n. 2, 109 S.Ct. at 2184 n. 2.
 
 
 15
 We have previously recognized that some entities have sufficient relationships to the IBT to be bound by the Consent Decree. We have ruled that IBT affiliates are bound because their interests were adequately represented by the IBT, see Election Rules Decision, 931 F.2d at 185-87, and that an officer of an IBT local was bound by the disciplinary mechanism of the Consent Decree because "the investigatory and disciplinary powers of the court-appointed officers are proper delegations of the powers of the IBT General President and the [General Executive Board] within the scope of the IBT Constitution that binds all members of the IBT ...," Friedman and Hughes, 905 F.2d at 622 (2d Cir.1990). However, in our most recent consideration of an enforcement of the Consent Decree, involving a remedy imposed upon an employer of IBT members, we were careful to recognize that we were not determining whether the decree applied "of its own force" but, instead, upheld the remedy as a proper use of the All Writs Act. See Yellow Freight, 948 F.2d at 102 (2d Cir.1991). The District Court in the pending matter considered our rulings in Election Rules Decision and Friedman and Hughes to have determined the inapplicability of Martin v. Wilks "to this ongoing case," but we think that overstates the matter. Whether any person is bound by a judgment always depends on the precise relationship of that person to the underlying litigation, and, as Friedman and Hughes illustrates, sometimes depends on the particular provisions of the judgment sought to be applied.
 
 
 16
 A trust and its trustees are distinct from both the employer and the union that authorized their existence. See Plumbers & Steamfitters Local 150 v. Vertex Construction Co., Inc., 932 F.2d 1443, 1451 (11th Cir.1991); Griffith Co. v. NLRB, 660 F.2d 406, 410 (9th Cir.1981), cert. denied, 457 U.S. 1105, 102 S.Ct. 2903, 73 L.Ed.2d 1313 (1982). An employee benefit trust is not necessarily bound by a judgment entered in litigation involving the pertinent union. See O'Hare v. General Marine Transport Corp., 740 F.2d 160, 167 (2d Cir.1984), cert. denied, 469 U.S. 1212, 105 S.Ct. 1181, 84 L.Ed.2d 329 (1985). Though the members of the IBT were adequately represented in the underlying litigation and though those members have an interest in assuring that Trust resources are not misused, it does not follow, as the Government contends, that the Trust or the trustees were adequately represented by the IBT in the underlying litigation. As the pending attempt to enforce the decree against the Trust and Ballew indicate, substantial issues arise as to whether conduct of the trustees is prohibited political campaigning or permissible distribution of pension benefit information. The interests of the IBT in agreeing to terms to regulate the conduct of the 1991 IBT election do not necessarily coincide with the interests of the Trust and the trustees in determining where the line is to be drawn between prohibited campaigning and permissible informing of Trust beneficiaries.[1] We conclude that the Consent Decree, of its own force, is not binding upon the Trust and its trustees, at least not so as to make applicable to Ballew, in his capacity as trustee, the obligation not to take action that can be regarded as influencing an IBT election.
 
 
 17
 B. Does the All Writs Act authorize Ballew's monetary obligation?
 
 
 18
 The All Writs Act authorizes federal courts to "issue all writs necessary and appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a). "The power conferred by the Act extends, under appropriate circumstances, to persons who, though not parties to the original action or engaged in wrongdoing, are in a position to frustrate the implementation of a court order or the proper administration of justice." United States v. New York Telephone Co., 434 U.S. 159, 174, 98 S.Ct. 364, 373, 54 L.Ed.2d 376 (1977). We have explicitly recognized the availability of the Act to require an entity that was not a party to the underlying IBT litigation to take action deemed necessary to implement the Consent Decree. See Yellow Freight, 948 F.2d at 102-05.
 
 
 19
 Appellants contend that the All Writs Act can be used only to command some course of future conduct and cannot be used to impose a retrospective monetary obligation. The Act's reference to the authority to issue "writs" would seem to support the appellants' contention. The imposition of a monetary obligation is normally the office of a judgment, not that of an ancillary writ like the writs of scire facias, habeas corpus, mandamus, and prohibition, which were historically within the purview of section 1651. See Pennsylvania Bureau of Correction v. United States Marshals Service, 474 U.S. 34, 40-43, 106 S.Ct. 355, 359-61, 88 L.Ed.2d 189 (1985); United States v. New York Telephone Co., 434 U.S. at 172-74, 98 S.Ct. at 372-73; Labette County Commissioners v. United States ex rel. Moulton, 112 U.S. 217, 221, 5 S.Ct. 108, 109-10, 28 L.Ed. 698 (1884). Though we have recognized the use of the Act to order prospective relief in a variety of circumstances, see, e.g., Yonkers Racing Corp. v. City of Yonkers, 858 F.2d 855 (2d Cir.1988), cert. denied, 489 U.S. 1077, 109 S.Ct. 1527, 103 L.Ed.2d 833 (1989); Safir v. United States Lines, Inc., 792 F.2d 19 (2d Cir.1986), cert. denied, 479 U.S. 1099, 107 S.Ct. 1323, 94 L.Ed.2d 175 (1987); In re Baldwin-United Corp., 770 F.2d 328 (2d Cir.1985), we have located no decision of this or any other court where the Act was relied upon to impose a retrospective monetary obligation upon a party not bound by a judgment.
 
 
 20
 The only case cited by the Government for the proposition that the reimbursement obligation is an appropriate exercise of the District Court's authority is Porter v. Warner Holding Co., 328 U.S. 395, 66 S.Ct. 1086, 90 L.Ed. 1332 (1946). That decision appears to rest solely on an interpretation of the District Court's authority under section 205(a) of the Emergency Price Control Act of 1942, ch. 26 § 205, 56 Stat. 23, 33, 50 U.S.C.App. § 925(a) (1940 & Supp. V 1945), repealed by Act of July 25, 1946, ch. 671, § 1, 60 Stat. 664. In any event, at most, Porter upheld the District Court's power to require the return of money obtained in violation of a statutory limitation. By contrast, in the pending case Ballew is not alleged to have obtained anything from the Trust. The reimbursement order is not a traditional order of restitution of the sort normally issued by a court of equity, see Porter, 328 U.S. at 402, 66 S.Ct. at 1091, but instead is a command to Ballew to reach into his own pocket and pay to the Trust money to compensate it for the expenses he is alleged to have improperly caused it to undertake. An obligation of that sort is in substance a damage remedy, akin to a surcharge of a trustee. The Act does not authorize that remedy.
 
 
 21
 We would have a different case if the Government had invoked the Act to obtain from the District Court a prospective order requiring Ballew to take or refrain from taking some action in order to assure the effective implementation of the Consent Decree. The "cease and desist" obligation, for example, had it not become moot, might well have been considered a permissible use of the Act. Moreover, in rejecting the reimbursement order as a permissible use of the All Writs Act, we are not determining whether, in a proper suit brought by or on behalf of the Trust, Ballew could be required to reimburse the Trust. In such litigation, the issue of whether Ballew's fiduciary obligations permitted him to incur the disputed expenses can receive plenary consideration by a court exercising its jurisdiction to enforce the trustees' obligations, rather than by a court reviewing the enforcement of union election rules promulgated under a consent decree in litigation to which Ballew was not a party.
 
 
 22
 For these reasons, we dismiss as moot the appeal from all aspects of the District Court's judgment other than the reimbursement obligation imposed upon Ballew, and we vacate that obligation.
 
 VAN GRAAFEILAND, Circuit Judge, concurring:
 
 23
 If the issues herein had not been rendered moot by the election, I would not be as ready as my colleagues to excuse Ballew's conduct--which both the election officer and the independent administrator found to be politically motivated--on the ground that he acted simply as a trust officer.
 
 
 24
 With that reservation, I concur.
 
 
 
 [1]
 For example, the Independent Administrator appeared to agree with counsel for the Committee to elect Ron Carey that the Trust could have permissibly distributed an analysis of the comparative benefits of the Trust and the so-called "30-and-out benefit" of the Local 804 Plan so long as the analysis made no reference to Carey or Local 804