Donna Lee H. WILLIAMS, Insurance Commissioner of the State of Delaware as Receiver for National Heritage Life Insurance Company in Liquidation, Petitioner,

v.

Lyle K. PFEFFER, Isaac Nussen, Ghildale Weisz a/k/a George Weisz, Jarnow Corp., Shilaat Corp., United Ventures Group, Inc., Ados Equities, and Jasper Properties Corp., Respondents.

No. 99 CIV. 12378 (BDP).

United States District Court, S.D. New York.

Oct. 2, 2000.

Thomas K. Lindgren, O'Keeffe & Lindgren, LLP, White Plains, NY, for Petitioner.

Peter Ginsberg, Washington, DC, for Respondent Pfeffer.

Pinchus D. Raice, Raice Paykin Krieg & Schrader LLP, New York City, for all other Respondents.

## MEMORANDUM DECISION AND ORDER

BARRINGTON D. PARKER, Jr., District Judge.

Petitioner, the Honorable Donna Lee H. Williams, Commissioner of Insurance for the State of Delaware, in her capacity as the Receiver of National Heritage Life Insurance Company ("NHL"), commenced this action seeking to set aside certain transfers of assets as unlawful conveyances under New York state law. Respondents Issac Nussen ("Nussen"), Ghildale Weisz ("Weisz"), Jarnow Corp. ("Jarnow"), Shilaat Corp. ("Shilaat") and United Ventures Group, Inc. ("UVG") move to dismiss the Petition for lack of subject matter jurisdiction. *See* Fed.R.Civ.P. 12(b)(1). For the reasons set forth below, the motion is granted.

## BACKGROUND

NHL is a Delaware insurance company in liquidation pursuant to a 1995 order of the Delaware Chancery Court. In 1996, petitioner commenced a diversity action in this Court to recover damages on behalf of NHL and its creditors in part for the alleged systematic looting of NHL by respondent Lyle Pfeffer ("Pfeffer") and other defendants (the "LPDA Action"). *Williams, v. LPDA Acquisition Corp., et al.*, No. 96 Civ. 3079(BDP). On June 17, 1998, this Court entered a judgment in favor of the Petitioner against Pfeffer in the amount of $72,000,000. Respondents Weisz, Nussen, Jarnow, Shilaat and UVG were not parties to the LPDA Action, and were not liable on the judgment against Pfeffer. To date, Pfeffer has not satisfied the judgment.

In late 1999, petitioner filed this subsequent lawsuit alleging that Pfeffer, through related entities Ados Equities ("Ados") and Jasper Properties Corp. ("Jasper")[1] fraudulently transferred $6,200,000 to Nussen, Weisz, Jarnow, Shilaat and UVG for the purpose of avoiding the impending federal judgment. Petitioner alleges that the fraudulent transfers occurred before the judgment was actually entered, but after a judgment was certain and imminent. Petitioner brings this suit pursuant to Fed.R.Civ.P. 69,[2] New York Civil Practice Law & Rules ("C.P.L.R.") §§ 5225(b) and 5227,[3] and alleges seven claims under New York state law, including five claims based upon New York's fraudulent conveyance statute, *see* N.Y. Debtor & Creditor Law §§ 273–a, 273, 274, 275 and 276, and two claims based

---

**1.** According to the petition, Ados, a New York corporation, was dissolved by proclamation on June 26, 1996, while Jasper's corporate status was revoked by the State of New Jersey on March 5, 1996. Petition ¶¶ 10–11.

**2.** Fed.R.Civ.P. 69(a) permits a judgment creditor to use any execution method consistent with the practice and procedure of the state in which the district court sits.

**3.** C.P.L.R. § 5225(b) provides in relevant part:

Property not in possession of judgment debtor. Upon a special proceeding commenced by the judgment creditor, against a person ... who is a transferee of money or other personal property from the judgment debtor, where it is shown that ... the judgment creditor's rights to the property are superior to those of the transferee, the court shall require such person to pay the money ... to the judgment creditor.

C.P.L.R. § 5227 provides in relevant part:

Payment of debts owed to judgment debtor. Upon a special proceeding commenced by the judgment creditor, against any person who it is shown is or will become indebted to the judgment debtor, the court may require such person to pay to the judgment creditor the debt upon maturity, or so much of it as is sufficient to satisfy the judgment, and to execute and deliver any document necessary to effect payment; or it may direct that a judgment be entered against such person in favor of the judgment creditor.

upon constructive trust and successor liability/alter ego theories.

The moving respondents seek to dismiss the petition for lack of subject matter jurisdiction on the ground that no federal question jurisdiction exists and that complete diversity is lacking since petitioner and UVG are both Delaware citizens. *See* Fed.R.Civ.P. 12(b)(1); 28 U.S.C. §§ 1331 and 1332. Moreover, respondents contend that jurisdiction over the claims in the petition cannot properly be predicated on ancillary jurisdiction.

## DISCUSSION

### I. Subject Matter Jurisdiction

■ It is well-established that federal courts are courts of limited jurisdiction and may not entertain law suits unless jurisdiction is both permitted by the United States Constitution and expressly provided for by Congress. *See Finley v. United States,* 490 U.S. 545, 547–48, 109 S.Ct. 2003, 104 L.Ed.2d 593 (1989) ("It remains rudimentary law that '[a]s regards all courts of the United States ... two things are necessary to create jurisdiction, whether original or appellate. The Constitution must have given to the court the capacity to take it, and an act of Congress must have supplied it.'") (*quoting The Mayor v. Cooper,* 6 Wall. 247, 252, 18 L.Ed. 851 (1868)). In determining whether federal jurisdiction exists, "it is to be presumed that a cause lies outside this limited jurisdiction and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Kokkonen v. Guardian Life Ins. Co.,* 511 U.S. 375, 377, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994) (citations omitted).

■ Petitioner does not dispute that neither federal question jurisdiction nor complete diversity exists. However, petitioner—in characterizing her action as one that merely seeks to enforce an existing federal judgment—contends that ancillary jurisdiction exists.[4]

■ Generally, a federal court may exercise ancillary jurisdiction: "(1) to permit disposition by a single court of claims that are, in varying respects and degrees, factually interdependent, and (2) to enable a court to ... manage its proceedings, vindicate its authority, and effectuate its decrees," even where no independent basis for jurisdiction may exist. *Kokkonen,* 511 U.S. at 379–80, 114 S.Ct. 1673 (citations omitted). The limited scope of a federal court's inherent power to exercise ancillary jurisdiction was examined by the Supreme Court in *Peacock v. Thomas,* 516 U.S. 349, 116 S.Ct. 862, 133 L.Ed.2d 817 (1996), where the plaintiff commenced a second federal action after unsuccessfully attempting to collect a judgment secured in a prior federal suit. In the second action, the plaintiff claimed that the original defendant had improperly diverted assets to a third party to avoid the judgment in the first action. The complaint alleged fraudulent conveyances and sought to reach the third party's assets by piercing the defendant's corporate veil. The district court ultimately agreed to pierce the corporate veil and entered judgment against the third party. The Court of Appeals affirmed.

■ The Supreme Court reversed. It first reviewed the circumstances under which a district court could exercise ancil-

---

4. "[A]ncillary jurisdiction typically involves claims by a defending party haled into court against his will, or by another person whose rights might be irretrievably lost unless he could assert them in an ongoing action in federal court." *Owen Equipment & Erection Co. v. Kroger,* 437 U.S. 365, 376, 98 S.Ct. 2396, 57 L.Ed.2d 274 (1978). Congress has codified much of the common law doctrine of ancillary jurisdiction as part of supplemental jurisdiction in 28 U.S.C. § 1367, but much of ancillary jurisdiction remains "a creature of common law." *Futura Development of Puerto Rico, Inc. v. Estado Libre Asociado de Puerto Rico,* 144 F.3d 7, 9 n. 1. For a history and background on the concept of ancillary jurisdiction and its closely related cousin, "pendent jurisdiction," see David D. Siegel, Practice Commentary, reprinted in 28 U.S.C.A. § 1367 at 829 (West 1993).

lary jurisdiction over claims having a factual and logical dependence on a prior federal lawsuit, and determined that to do so, a court "must have jurisdiction over a case or controversy before it may assert jurisdiction over ancillary claims." Therefore, the court emphasized, "[i]n a subsequent lawsuit involving claims with no independent basis for jurisdiction, a federal court lacks the threshold jurisdictional power that exists when ancillary claims are asserted in the same proceeding as the claims conferring federal jurisdiction." *Id.* at 354, 116 S.Ct. 862. In other words, the mere factual interdependence of claims between an earlier and subsequent lawsuit is not a sufficient predicate for ancillary jurisdiction.

For these reasons, the facts alleged in this second suit—no matter how interdependent upon the first—cannot support ancillary federal jurisdiction. Once judgment was entered in the initial action, "the ability to resolve simultaneously factually intertwined issues vanished.... [N]either the convenience of litigants nor considerations of judicial economy can justify the extension of ancillary jurisdiction." *Id.* at 355, 116 S.Ct. 862. Moreover, the fact that the conduct forming the basis of this second suit occurred prior to the issuance of the judgment in the initial suit does not alter this conclusion. Extending "jurisdiction to factually independent subsequent proceedings will not serve the purpose of judicial efficiency whether those proceedings premise liability upon pre-or post-judgment actions." *Futura,* 144 F.3d at 11.

■ The Supreme Court next examined the relationship between ancillary jurisdiction and a district court's inherent power to enforce its own judgments. The Court conceded that the exercise of ancillary jurisdiction had been approved over supplementary proceedings requiring third parties to assist in the enforcement of federal judgments—such as in a mandamus action against county officials to levy a tax to pay an existing judgment, *see Labette County*

*Comm'rs v. United States ex rel. Moulton,* 112 U.S. 217, 5 S.Ct. 108, 28 L.Ed. 698 (1884); *Riggs v. Johnson County,* 6 Wall. 166, 18 L.Ed. 768 (1867). The Supreme Court then went on to emphasize that it had "never authorized the exercise of ancillary jurisdiction in a subsequent lawsuit to impose an obligation to pay an existing federal judgment on a person not already liable for that judgment." *Peacock,* 516 U.S. at 357, 116 S.Ct. 862. The Court noted that it had "cautioned against the exercise of jurisdiction over proceedings that are entirely new and original or where the relief [sought is] of a different kind or on a different principle than that of the prior decree." *Id.* at 358, 116 S.Ct. 862 (internal quotations omitted) (citations omitted).

The Seventh Circuit applied this matrix in *Galuska v. Geoquest, Inc.,* 172 F.3d 53 (7th Cir.1998), where a plaintiff, proceeding on a fraudulent conveyance theory and alleging wrongful transfers of assets by the original defendant to a third party, sought to enforce a previous federal judgment. The Court of Appeals affirmed the district court's determination that subject matter jurisdiction did not exist, and concluded that *Peacock* foreclosed the view that ancillary enforcement jurisdiction exists in a subsequent action based on state law claims to enforce a prior federal judgment against non-diverse third parties. *Id.; see Futura,* 144 F.3d at 11 n. 2 ("[enforcement jurisdiction] cannot extend to most cases that seek to assign liability for the judgment to a new party.").

This Court is mindful that the Ninth Circuit in *Thomas, Head and Greisen Employees Trust v. Buster,* 95 F.3d 1449 (9th Cir.1996), reached a different result than in *Galuska.* There, the court—two years before *Galuska*—found that a second action aimed at enforcing a prior federal judgment based upon a fraudulent conveyance theory sought only to recoup assets wrongly transferred to third-parties. Viewed from this perspective, the court characterized the fraudulent conveyance

action as not one seeking to impose liability on non-parties, but rather to preserve a federal judgment—a characterization expressly left unaddressed in *Peacock*, 516 U.S. at 357 n. 6, 116 S.Ct. 862. Consequently, the Court of Appeals held that *Peacock* was inapposite, and permitted the exercise of ancillary enforcement jurisdiction over the second action. This Court, however, is not persuaded by *Thomas*, *Head*, and instead finds the rationale in *Galuska* more consonant with the Supreme Court's guidance in this area, especially since *Peacock* specifically listed "civil conspiracy, fraudulent conveyance and veil piercing" claims as examples of new and original theories that could not be maintained in subsequent enforcement actions against third parties without an independent basis for subject matter jurisdiction. *Peacock*, 516 U.S. at 358–59, 116 S.Ct. 862; *see also Epperson v. Entertainment Express, Inc.*, 2000 WL 630908 (D.Conn. March 31, 2000) (" 'Subsequent suits to enforce judgments must have their own source of federal jurisdiction when they involve new theories of liability, such as fraudulent conveyances.' ") (*quoting Galuska*, 172 F.3d at 53).

Here, petitioner seeks to impose obligations on persons and entities not subject to the original federal judgment based upon fraudulent conveyance, constructive trust, successor liability and alter ego theories. The facts upon which petitioner relies do not resemble those raised in the original proceeding, and would involve detailed investigation and analysis into transactions and entities not directly related to the first proceeding, requiring an independent, full-blown trial on the merits. *See generally* Petition ¶¶ 1–112; *see also Futura*, 144 F.3d at 10–11 (where "a court is asked to delve into a new and separate

matter, . . . an independent basis for jurisdiction is required."). Moreover, the various legal theories asserted under New York statutory and common law by petitioner are intended as additional theories of liability—designed to impose the effect of the prior judgment onto non-diverse parties not contemplated by that judgment. *See Peacock*, 516 U.S. at 358–59, 116 S.Ct. 862 (noting that the claims asserted in plaintiff's second proceedings, "fraudulent conveyance and veil-piercing— all involved new theories of liability not asserted in the [original] suit."); *Galuska*, 172 F.3d at 53 (describing fraudulent conveyance and veil piercing claims as "new theories of liability," requiring their own source of jurisdiction). As the initial action was based upon diversity jurisdiction, exercising jurisdiction here would permit petitioner to achieve "indirectly through two separate actions that which [she] could not have achieved directly in one action." *National Westminster Bank v. Cheng*, 751 F.Supp. 1158, 1160 (S.D.N.Y.1990).[5]

## CONCLUSION

For the reasons stated above, respondents' motion for dismissal is granted. The Clerk of the Court is directed to dismiss the petition without prejudice.

SO ORDERED:

---

5. In the event this Court were to find jurisdiction to be lacking, petitioner offers to drop UVG—the sole non-diverse respondent—as a party from this action. However, on the basis of the moving papers, this Court cannot now determine whether UVG may properly be dismissed from this action under Fed.R.Civ.P.

19, and therefore, whether the jurisdictional problems discussed in this opinion would be resolved. The Court notes that movants have conceded that they are each subject to the jurisdiction of the New York state courts. *See* Respondents' Reply Memorandum of Law at 11.